Linda Marie **CROFTON** and **Richard Crofton**, Respondents,

v.

**CITY OF KANSAS CITY, Missouri**, Appellants.

No. WD 34367.

Missouri Court of Appeals, Western District.

Aug. 23, 1983.

Motion for Transfer to Supreme Court Overruled Nov. 15, 1983.

Aaron A. Wilson, City Atty., Michael W. Bradley, Jeffrey L. Hess, Asst. City Attys., Kansas City, for appellants.

Paul L. Redfearn, Louis P. Comeau, of William H. Pickett, P.C., Kansas City, for respondents.

Before SOMERVILLE, P.J., TURNAGE, C.J., and MANFORD, J.

MANFORD, Judge.

This is an action to recover damages for personal injuries against a municipality, because of defects in a highway located within the corporate limits of the municipality. Trial by jury resulted in a verdict to respondents'-plaintiffs' favor in the sum of $42,-750.00. The trial court entered judgment in accordance with the verdict. The judgment is reversed.

Appellant-city (defendant at trial) presents one point on this appeal, charging that the trial court erred in refusing to enter judgment in the city's favor at the close of the evidence, because the city owed no duty of care to respondents (plaintiffs at trial) with regard to U.S. 50 Highway in that the evidence established that at the time of the accident U.S. 50 Highway was a highway built, owned, and maintained by the Missouri State Highway Commission[1]

and as a result, the nondelegable duty of the city to maintain its roads does not extend to a state highway.

The record reveals that on February 23, 1973, respondent Linda Crofton was operating her automobile eastbound in the curb lane of U.S. 50 Highway. As she proceeded on U.S. 50 Highway to a point just west of the Blue River Bridge, she came upon some "chuckholes" in her lane of travel. These chuckholes had been in existence for a long time, and at the time, were in an icy condition. This portion of U.S. 50 Highway is within the corporate limits of the appellant-city.

Linda Crofton attempted to avoid the chuckholes, and in the process, she lost control of her automobile. Her automobile crossed the center line of U.S. 50 Highway and struck another automobile operated by one Judy Donovan. A third automobile operated by one Elizabeth Riederer was also involved in the collision.

Linda Crofton received personal injuries as a result of the accident. She sought damages for her injuries and was joined in this suit by her husband who sought recovery for loss of consortium.

The evidence showed that at the time of this accident, there was no maintenance agreement as to U.S. 50 Highway between the appellant-city and the State Highway and Transportation Department. By way of admissions from respondents-plaintiffs, the following was also made a part of the record:

"Number 1. That Missouri State Highway 50 between Lawn and Lister, as described in plaintiffs' First Amended Petition, was designated as U.S. Highway 50 at the time of the occurrence mentioned in plaintiffs' Petition.

2. That Missouri State Highway 50 between Lawn and Lister, as described in plaintiffs' First Amended Petition, was part of the Missouri State Highway System at the time of the occurrence mentioned in plaintiffs' Petition.

1. Now designated as the Missouri Highway and Transportation Department.

3. That in February of 1973 the Missouri State Highway Department was exercising maintenance functions upon Missouri State Highway 50 between Lawn and Lister, as described in plaintiffs' First Amended Petition.

4. That U.S. Highway 50, including that portion between Lawn and Lister as described in plaintiffs' First Amended Petition, was established under the authority of the Centennial Road Act as passed by the Missouri General Assembly in 1921.

5. That Missouri State Highway 50 between Lawn and Lister, as described in plaintiffs' First Amended Petition, was established and paved as a State Highway in 1927.

6. That the defects in Missouri State Highway 50 between Lawn and Lister, as described in plaintiffs' First Amended Petition, were repaired by the Missouri State Highway Department or agents acting on behalf of the Missouri State Highway Department."

At the close of respondents' evidence, appellant-city moved for a directed verdict. This motion was denied. At the close of all the evidence, appellant-city again moved for a directed verdict. This second motion was denied. The jury returned its verdict, awarding the sum of $41,250.00 to Linda Crofton, and the sum of $1,500.00 to her husband for a total judgment of $42,750.00 against the city. Appellant-city moved for judgment N.O.V., and this motion was deemed denied after the lapse of ninety days because the trial court did not rule the motion. This appeal followed.

The parties hereto agree upon the facts involved, with the noted exception that appellant-city concludes from the above admissions that the particular location of U.S. 50 Highway was built and owned by the Missouri Highway and Transportation Department. Respondents do not agree that the foregoing admissions establish the construction and ownership in the Highway

and Transportation Department. There is no other direct evidence on this point. This particular dispute is of no importance anyway because disposition of this matter rests upon other evidence upon the record and the applicable law related to the issue on appeal.

The parties quite obviously differ regarding the issue whether appellant-city owed a duty to maintain U.S. 50 Highway in a safe condition. Appellant-city disclaims any duty, asserting that U.S. 50 Highway is a state public highway. In contrast, respondents contend the city owes such a duty (and this duty is nondelegable) because said highway is within the corporate limits of the city and by virtue of the city charter. In a simplified way, this is the dispute presented on this appeal.

Appellant-city first acknowledges the undisputed evidence which reveals that the particular portion of U.S. 50 Highway is within its corporate limits. The city points out that the evidence reveals no maintenance agreement between the city and the Highway and Transportation Department. It is further noted from the above admission that U.S. 50 Highway was established under the 1921 Centennial Road Act. These same admissions acknowledge that at the time of this accident, the Missouri Highway and Transportation Department was exercising maintenance functions upon the particular portion of U.S. 50 Highway.

It is noted that the defects in U.S. 50 Highway were repaired by the Missouri Highway and Transportation Department.

Appellant-city contends that it owed no duty to respondents to maintain U.S. 50 Highway in a safe condition simply because this highway was within its corporate limits. Appellant-city furthers its argument by pointing out that Mo. Const. Art. IV, § 29 established the highway department and its authority over state highways. That article and section, as applied to the instant proceedings, reads as follows: [2]

2. Mo. Const. Art. IV, § 29, as amended (1979), reads as follows:

"§ 29. Highways and transportation commission—qualifications of members and em-

"§ 29. **Highway commission—qualifications of members and employees—authority over state highways**

Section 29. The department of highways shall be in charge of a highway commission. The number, qualifications, compensation and terms of the members of the commission shall be fixed by law, and not more than one-half of its members shall be of the same political party. The selection and removal of all employees shall be without regard to political affiliation. It shall have authority over and power to locate, relocate, design and maintain all state highways; and authority to construct and reconstruct state highways, subject to limitations and conditions imposed by law as to the manner and means of exercising such authority; and authority to limit access to, from and across state highways where the public interest and safety may require, subject to such limitations and conditions as may be imposed by law."

In its argument, appellant-city tracks the history of road maintenance with particular regard to the responsibility of counties and municipalities. Appellant-city references the Hawes Act of 1917 (49th General Assembly-Session Laws, p. 485) which created the first state highway board. The board was authorized to designate 3,500 miles of state road and to establish a fund to provide financing of road projects. Under the Hawes Act, counties and "civil subdivisions" were given the duty to construct and maintain the designated state roads subject to the direction of the state highway engineer.

In 1919, the Hawes Act was amended by the Morgan-McCullough Act. This new provision called for the allocation of $1,200.00 per mile for the construction of state roads, and the counties were to contract for all road construction. In those projects where costs exceeded the allocated amount, local county bonds approved by the voters were authorized to meet the project cost.

History reveals that due to voter disapproval, many county bond issues failed with the result of too little revenue to develop a road system. History also reveals that the Missouri Constitution of 1875, § 44(a), was amended in 1920, authorizing $60,000,000 in state road bonds. The constitutional change also provided for the retirement of these bonds from motor vehicle registration fees.

The foregoing changes were followed by the passage of the Centennial Road Law in 1921 (51st General Assembly, First Extra Session, Session Laws 1921, p. 131). This act was a lengthy and far-reaching piece of legislation, but in the main and for purposes herein, it can be pointed out that it created the Missouri Highway Commission, prescribed the powers and duties thereof, provided a state road fund, and provided for the construction and maintenance of a state-wide connected system of hard-surfaced public highways. A section of the act [prior section 8115] now is found in § 227.030, RSMo 1978, which reads as follows:

"**227.030. Construction and maintenance of highway system under supervision and control of commission.**

ployees—authority over state highways and other transportation programs.

Section 29. The department of highways and transportation shall be in charge of a highways and transportation commission. The number, qualifications, compensation and terms of the members of the highways and transportation commission shall be fixed by law, and not more than one-half of its members shall be of the same political party. The selection and removal of all employees shall be without regard to political affiliation. The highways and transportation commission shall have authority over all state transportation programs and facilities as provided by law, including, but not limited to, bridges,

highways, aviation, railroads, mass transportation, ports, and waterborne commerce, and shall have authority to limit access to, from and across state highways where the public interest and safety may require. The present members of the highway commission shall serve as members of the highways and transportation commission for the remainder of the terms for which they were appointed. All references to the highway commission and the department of highways in this constitution and in the statutes shall mean the highways and transportation commission and the department of highways and transportation."

1. The construction and maintenance of said highway system and all work incidental thereto shall be under the general supervision and control of the state highway commission, which is hereby authorized, empowered and directed to take whatever steps may be necessary to cause said state highway system to be constructed at the earliest possible time, consistent with good business management and funds available, after this chapter takes effect, and also to provide for the proper maintenance of said state highway system.

2. The state highway commission shall have power to make all final decisions affecting the work provided for herein and all rules and regulations it may deem necessary not inconsistent with this chapter for the proper management and conduct of said work and for carrying out all of the provisions of this chapter in such manner as shall be to the best interest and advantage of the people of the state.

3. The commission is hereby given power and authority to purchase, lease, or otherwise acquire and supply any tools, machinery, supplies, material and labor needed for said work and to pay for engineering, preparation of plans and specifications, cost of advertising, engineering supervision and inspection, and all expenses and contingencies in connection with the construction and maintenance of such state highway system. (R.S. 1939, § 8763)"

As further regards the jurisdiction of designated highways, § 227.210, RSMo 1978 reads as follows:

"**227.210. Commission to maintain state highways, how—cost, how paid.**

1. The state highways as designated in section 227.020 shall be under the jurisdiction and control of the commission; and the commission shall maintain such roads in a state and manner consistent with the present condition of such roads; provided, that when the roads included in said state highway system have been constructed by the commission, or acquired as provided for in sections 227.120 to 227.-150 and section 227.170, they shall be maintained by the commission and kept in a good state of repair at whatever cost may be required.

2. The cost of repairing and maintaining said roads shall be paid out of the state road fund on the warrant of the state auditor, when such payment shall be ordered by the commission. For the purpose of maintaining and repairing such roads, the commission shall have authority to purchase or otherwise acquire, all necessary tools, machinery, supplies and materials, and may employ the necessary labor therefor, and the commission may provide for the proper repair and maintenance of such roads, or any portion thereof, by contract, which shall specify the nature and character of the work to be done. The commission shall also provide for a system of patrol for maintaining and repairing these state highways, so that such highways may be effectually and economically preserved and maintained."

Section 227.210 is the applicable revision to former § 8134 of the Centennial Road Act. The instant act, by § 39 thereof, repealed all prior laws in conflict thereto. (See 51st General Assembly, First Special Session 1921, Session Laws, p. 167.) The result of the foregoing enactments and revisions was to abolish local responsibility for state highways and vest that responsibility in the State Highway Commission.

Appellant-city argues that with the foregoing enactments and revisions, the common-law duty of municipalities to maintain state roads within their corporate limits (absent an express agreement to maintain) was abolished. The appellant-city further argues that that duty which existed at common-law prior thereto now rests with the Missouri Highway and Transportation Commission.

Appellant-city bolsters its contention by referring to Mo. Const. Art. IV, § 31 (1945), which reads:

"**§ 31. State highways in municipalities**

Section 31. Any state highway authorized herein to be located in any munici-

pality may be constructed without limitations concerning the distance between houses or other buildings abutting such highway or concerning the width or type of construction. The commission may enter into contracts with cities, counties or other political subdivisions for and concerning the maintenance of, and regulation of traffic on any state highway within such cities, counties or subdivision."

Appellant-city argues that the foregoing section would be useless if the Highway and Transportation Department and the various municipalities *already had an independent obligation to maintain the state highway.* (emphasis added). Appellant-city further argues that if both the Highway and Transportation Department and the municipalities already had the duty to maintain the state highway, there would be no need to have maintenance agreements between those parties. (Art. IV, § 31)

In further support of its contention, appellant-city cites to this court *Lowery v. Kansas City,* 337 Mo. 47, 85 S.W.2d 104 (1935), a case wherein plaintiff sought recovery for personal injuries against defendant, the city of Kansas City, Missouri. Plaintiff was a passenger in a vehicle which struck a steel girder which extended above the road surface, resulting in the vehicle turning over. Evidence revealed that the area of the girder had been lighted previously, but on the night of the accident, the light was broken. Evidence revealed that the light had been broken for about four months. Plaintiff sought recovery against defendant city on the theory that the bridge was a public street of the city and within the corporate limits of the city. The plaintiff, like the respondents in the instant case, contended that the city could not delegate to the state the duty to maintain "this public highway and street in a reasonably safe condition for travel." *Lowery* at 107.

Additional evidence in *Lowery* established that the A.S.B. Bridge was a toll bridge. The indebtedness of the purchase of the bridge was provided by a bond issue approved by the people. After purchase, the bridge was deeded to the state.

In affirming the trial court's grant of a new trial (for other reasons not related to the issues in the instant case), the Missouri Supreme Court ruled that plaintiff "had no cause of action against the city upon its common-law duty to maintain its streets in a safe condition for travel because the place where plaintiff was injured was not a city street." *Lowery* at 109. The court concluded that the bridge was part of the state highway system. The court further ruled that the defendant-city was not liable upon its contract to provide lighting for the bridge.

*Lowery* was later cited and discussed in the case of *Treon v. City of Hamilton,* 363 S.W.2d 704, 707 (Mo.1963). In *Treon,* an action for wrongful death, our state supreme court affirmed the trial court's ruling on the grant of a new trial (for reasons unrelated to the issues in the instant case), and in so doing, pointed out that the rule in *Lowery* did not apply in *Treon* because the rule in *Lowery* "merely exempted the city from liability on the ground that the A.S.B. bridge in Kansas City was a part of the State Highway System and was not a city street." In *Treon,* the court ruled that a ditch constructed incidental to the location of a state road was not "absorbed in the highway", and thus, the city of *Hamilton* was not automatically relieved of its responsibilities in the ditch area. The evidence in *Treon also* revealed that the "ditch area" had been returned to the city. In addition, there was some question whether the "ditch area" was ever really a part of the highway system at any time.

Appellant city further cites to this court *Duckworth v. City of Springfield,* 194 Mo. App. 51, 184 S.W. 476, 478 (1916), wherein the federal government built and owned a road named National Boulevard. The defendant-city built sidewalks along the boulevard. In denying plaintiff recovery for injuries allegedly caused by the sidewalk construction, our state supreme court declared that the sidewalk construction was ultra vires the city's powers, plus "[t]he fact that a roadway over which the public has a permissive use, but which is being main-

tained and controlled by some one other than the city, and especially when so maintained and controlled by the supreme governmental authority, is within the corporate limits of the city does not make it a street of the city." It should be noted that the decision in *Duckworth* predated the constitutional and statutory revisions discussed above as well.

In another decision, *State ex rel. Russell v. State Highway Commission,* 328 Mo. 942, 42 S.W.2d 196, 204 (banc 1931), an action by a taxpayer to prohibit construction of U.S. 40 Highway within the corporate limits of Kansas City, our state supreme court ruled, "The fact that a road of the state highway system goes through a municipality does not make it the property of the municipality. These highways form a state wide connected system, and their passing through various municipalities is subservient to that purpose. In our opinion their construction or improvement is not a gift or grant to such municipalities."

In *State ex rel. City of Hannibal v. Smith,* 335 Mo. 825, 74 S.W.2d 367 (banc 1934), a bridge was held to be a part of the state highway system, and the agreement by the state to provide some of the construction funds was not a grant or gift to the city. In *State ex rel. City of California v. Missouri Utilities Company,* 339 Mo. 385, 96 S.W.2d 607, 614 (1936), wherein the city sought ouster of the utility's use of its streets, alleys, and public places, our state supreme court declared, "It was, however, clearly, not the intention of the Legislature to vest the commission with jurisdiction over these portions of city streets, so designated as parts of state highways, superior to the jurisdiction of the municipal authorities. Certainly the city's police power as to such streets remains unaffected. Orders under § 8109 [3] are limited to those necessary to prevent interference with traffic on the highways and with highway construction. In matters immediately concerned with the construction of paving of the highways and their maintenance, the commission has jurisdiction. But in other matters

the city's power continues." For other authority relative to the continuance of other city powers, see *Public Water Supply Dist. No. 2 of Jackson County v. State Highway Commission,* 244 S.W.2d 4 (Mo.1951).

As a final note, appellant-city cites to this court the case of *State ex rel. State Highway Commission v. City of St. Louis,* 575 S.W.2d 712 (Mo.App.1978), a case wherein the court ruled that the highway commission could not, as a condition of the construction of a state highway through the city, extract or require the city to pay a portion of the costs of acquiring right of way. Appellant-city herein urges that this case is analogous to the instant case, because if the state cannot require payment from a city for right-of-way acquisition, it must follow that the state cannot require a city to pay maintenance costs for a state highway.

Both parties provide this court with substantial reference to authority from other states. No reference to those sources provided by either party is necessary because of the disposition of this appeal.

Respondents meet appellant-city's contentions by refuting the applicability of authority cited by appellant-city, and as noted infra, by arguing that appellant-city is nevertheless liable because of the provisions of its charter.

Respondents suggest that *Lowery* is distinguishable because the bridge in that case at the time of the accident was "under the sole and exclusive jurisdiction and control of the *Missouri State Highway System*" and "that the bridge was never a public street in the city and the city had no authority and power to maintain it." Respondents contend that the particular portion of U.S. 50 Highway herein was not under the sole and exclusive jurisdiction of the state. Respondents contend that by virtue of its charter, the appellant-city had authority and power to maintain U.S. 50 Highway and thus, *Lowery* is not controlling.

Respondents further argue that *Treon* supports their position, because the court in

---

**3.** Section 8109 is now § 227.240, RSMo 1978.

*Treon* ruled that the city's liability arose out of the city's jurisdiction and power to exercise control over its streets. Respondents contend that by reason of the charter of appellant-city, the rule in *Treon* is controlling herein.

Respondents conclude that the ruling in *Duckworth* has no application to the instant case, because it merely declares that a street controlled and maintained by another authority, although within the corporate limits of the city, does not involve or address the issue of nondelegable duty of the city.

Respondents conclude that the remaining authority cited by appellant-city also is not applicable. Respondents further urge the rule announced in *German v. Kansas City,* 512 S.W.2d 135, 141 (Mo. banc 1974) controls. Our state supreme court in *German* declared that the basis for the city's nondelegable duty to maintain its streets in a reasonably safe condition arose from the very same charter provision referenced infra. This court notes, however, that in *German* the defendant-city had conceded that the street in question (63rd Street Trafficway) was a city street. In *German,* unlike the instant case, there was never any issue over the fact that the street in question was within the exclusive jurisdiction and control of the city. The reference by the court in *German* to the charter provision did not relate to the issue of a state highway. *German* is clearly distinguishable, and is not only found to be not controlling, but to be not applicable in the instant case.

This court has reviewed the remaining authority, both from Missouri and other jurisdictions, and finds none of that authority dispositive of the issue herein.

Attention is now directed to respondent's contention that § 1(16) of Article I of the Charter of Kansas City, Missouri, other authority notwithstanding, vests the authority and power in appellant-city to exercise control "to maintain U.S. Highway 50 in a safe condition." From this, respondents conclude a corresponding nondelegable duty to

maintain U.S. 50 Highway (the particular portion involved herein) in a safe condition.

Respondents contend that the following portion of Art. I, § 1(16) of the charter supports their contention. It reads:

"**[Streets, public places, sewers.]** To acquire, hold, establish, open, locate, relocate, vacate, alter, widen, extend, grade, regrade, improve, adorn, beautify, repair, construct, reconstruct, maintain, light, sprinkle, drain, and clean within or without the limits of the city or of the State of Missouri public highways, streets, boulevards, trafficways, parkways ... or any of them, and all things appurtenant thereto; and to do all other things deemed beneficial to the use and enjoyment thereof; to have and exercise full, complete and exclusive control over the same, and regulate the use thereof, and to keep and maintain the same in an open, safe and clean condition...."

■ It is first noted that appellant-city, just like all other municipalities within our state, derives its power only from the state. The state expresses the grant of those powers via our state constitution and statutes enacted by the General Assembly. The fact that appellant-city is a charter first-class city does not alter or void that basic principle. The fact that appellant-city is a charter first-class city merely provides, in contrast with other municipalities, that it may possess more extensive powers, and does not mean or suggest that it is not subject to our state constitution and state statutes. *Pearson v. City of Washington,* 439 S.W.2d 756 (Mo.1969).

Reduced to its simplest format, respondents' argument is that the foregoing charter provision vests in appellant-city the power and dominion over the particular portion of U.S. 50 Highway here in question. Respondents argue that at the least, appellant-city had joint or mutual control, dominion or jurisdiction over the state highway with the Missouri Highway and Transportation Department. Respondents contend that the state constitution and pertinent statutes do not vest "exclusive control" in the state. Thus, respondents reason

that this "dual responsibility" places a non-delegable duty upon appellant-city to maintain U.S. 50 Highway in a safe condition.

■ By respondents' reasoning, the above charter provision would have to be construed to permit appellant-city to assume control, dominion, and jurisdiction over a state highway in contravention of our state constitution and state statutes. Appellant-city has no such authority.

This case does not present the situation where respondents are attempting to designate U.S. 50 Highway as a city street or any other municipal thoroughfare. Unlike Alice in Wonderland, respondents are not suggesting that U.S. 50 Highway is a city street simply because they say it is a city street. The parties herein agree that at the time of this accident, the particular portion of U.S. 50 Highway was a state highway. The only issue is whether the constitutional and statutory provisions, coupled with the above charter provision, cast appellant-city in at least a dual role of responsibility or duty (non-delegable) to maintain this particular portion of U.S. 50 Highway in a safe condition.

This court cannot agree with respondents that the foregoing provision of the charter of appellant-city vests appellant-city with power and authority over this particular portion of U.S. 50 Highway. The most analogous case in our own state and one which, by analogy, provides the basis for disposition of this appeal is *Lowery.* As noted above, *Lowery* was explained in *Treon.* This court concludes that under the rule in *Lowery,* the particular portion of U.S. 50 Highway comes under that rule "because the place where plaintiff [respondents] was injured was not a city street." *Lowery* at 109.

Indeed, there is no evidence upon this record, nor is it even contended by respondents, that this particular portion of U.S. 50 Highway was a city street, or that it was anything other than a state highway.

■ Our state constitution and statutes (cited above) vest exclusive control, dominion, power, and jurisdiction over this partic-ular portion of U.S. 50 Highway in the Missouri Highway and Transportation Department. There was no maintenance agreement between appellant-city and the Missouri Highway and Transportation Department which permissibly would create an exception to the duty of the Missouri Highway and Transportation Department, and which would place a nondelegable duty on appellant-city.

Assuming arguendo (and just the opposite is true herein) that appellant-city was to claim that by its charter provision it possessed power and authority over this portion of U.S. 50 Highway, appellant-city would be wrong. Appellant-city has no authority or power to vest itself with any powers or authority not granted to it by the state.

It is the conclusion of this court that upon the particular facts and circumstances herein, and in view of the applicable constitutional and statutory law, appellant-city owed no duty to respondents to maintain the particular portion of U.S. 50 Highway in a safe condition. The question of whether there was a nondelegable duty need not and is not reached, because before that question arises, respondents, upon their proof, were required to show that appellant-city owed them a duty. The record reveals no such duty.

The trial court erred upon its failure to sustain appellant-city's motion for directed verdict or in the alternative, judgment N.O.V.

The judgment, for the reasons set forth herein, is in all respects reversed.

All concur.