Hand v. St. Louis.

HAND, Appellant, v. CITY OF ST. LOUIS.

Division One, November 12, 1900.

1. **Conveyance in Trust:** NO RESERVATION: DIVERSION OF USE: CASE STATED. Land was conveyed by deed to the city of St. Louis, to be used for the purpose of a public market, in which persons should be licensed to use and occupy stands for the sale of provisions. It was expressed in the deed that if within one year from its date, the city should not erect a market house on the lot, any responsible company might do so upon like conditions. The city accepted the deed, took possession of the lot, erected a market house thereon, and maintained the same for about ten years; but after that period ceased to use it for a market house, and instead erected an engine house for the use of the fire department, and thereafter used it for such engine house only. Plaintiff, as devisee of the grantor, brought suit in equity to divest the city of the title to the land, and to vest it in her as the grantor's devisee, on the ground that the city had diverted the property from the use for which it was conveyed and applied it to a different purpose. There was no condition in the grant, and no reservation of the right of reversion or re-entry on the diversion or abandonment of the use. *Held,* that a demurrer to plaintiff's petition was properly sustained.

2. **Pleading:** ADMISSION BY DEMURRER. Mere conclusions should not be pleaded. And a demurrer to a petition which draws conclusions does not admit such conclusions, but only such facts as are pertinently pleaded.

3. **Equity:** LACHES: DILIGENCE. Equity requires reasonable diligence of all who seek its relief, and where plaintiff has acquiesced for nearly twenty-five years in the alleged disregard of the purpose of a conveyance in trust, a court of equity would require some explanation of her long aquiescence before it would hear her complaint.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Lyon & Swarts* and *William H. O'Brien* for appellant.

By the deed of conveyance and dedication the legal fee in the land passed to the respondent; there was no reversion or re-entry provided for in the deed; the respondent could not lawfully divert the use of the premises from market house purposes to an engine house for the use of the fire department, and therefore the appellants have the right to invoke the aid of a court of equity to restrain the respondent from making any other use of the land than that for which it had been conveyed and dedicated, and to compel the execution of the trust if it were possible to execute the same. If, upon the facts before the court, it has become impossible to execute the use, then it was for a court of equity to declare such impossibility, and at the same time a reversion of the title to the appellant, as devisee of the original donor, and to divest the title out of the respondent and vest the same in her.    Ford v. French, 72 Mo. 250; Dunlap v. Henry, 76 Mo. 106; Woodsworth v. Tanner, 94 Mo. 124; Macklin v. Allenberg, 100 Mo. 337; Baker v. St. Louis, 7 Mo. App. 429, 75 Mo. 671; Cummings v. St. Louis, 90 Mo. 259; Campbell v. City of Kansas, 102 Mo. 326; Br'd of Reg. Nor. Sch. Dist. No. 3 v. Painter, 102 Mo. 464; Goode v. St. Louis, 113 Mo. 257; Barclay v. Howell's Lessee, 6 Pet. 498; Hardy v. Mayor, etc., City of Memphis, 10 Heiskell (Tenn.), 127; Barr v. Weld, 24 Pa. St. 84; 2 Dillon on Municipal Corporations (4 Ed.), sec. 653.

*B. Schnurmacher* and *Chas. Claflin Allen* for respondent.

(1) Shepard having conveyed the land in fee to the city of St. Louis for a particular public use, but without any condition or right of re-entry or forfeiture, all title passed to the city, and neither he nor his heirs thereafter had any further interest therein, nor could they reclaim the same.    Goode v.

St. Louis, 113 Mo. 257; Women's Christian Ass'n v. Kansas City, 147 Mo. 103; Lackland v. Walker, 151 Mo. 210; Barclay v. Howell's lessee, 6 Pet. 498; Dillon's Mun. Corp., sec. 653.     (2) The most that the donor or his heirs in such case can insist upon is that the particular use of the property, if not impossible of observance, be specifically enforced.  But in such case the complaint would be like that of any other member of the community; not for the recovery of the property —not for their own enrichment—but to secure the continued observance of the use.  Goode v. St. Louis, 113 Mo. 257; Rutherford v. Taylor, 38 Mo. 315; Cummings v. St. Louis, 90 Mo. 259; Curran v. Louisville, 83 Ky. 628; Coffin v. City of Portland, 27 F. R. 417; 2 Dillon's Mun. Corp., sec. 653; Barclay v. Howell's lessee, 6 Pet. 498.     (3) Where property is conveyed or dedicated to a public use and by reason of general changes in the locality, or for other causes, the prescribed use becomes impracticable, the title (in the absence of a condition to that effect in the original deed or grant) does not revert, but the property may be subjected to other proper public uses.  Women's Christian Ass'n v. Kansas City, 147 Mo. 103; Lackland v. Walker, 151 Mo. 210.     (4) But if the contention of plaintiffs were well founded, and plaintiff could assert a forfeiture or right of re-entry as for condition broken, this proceeding would have to fail, because the law would afford her an adequate remedy in ejectment. Campbell v. City of Kansas, 102 Mo. 326; Ellis v. Kyger, 90 Mo. 600.     (5) The conveyance to the city of St. Louis was made by Shepard on May 17, 1860.   The petition avers that the city took possession, erected a market building, and for about ten years maintained the same in accordance with the terms of the grant; therefore until about 1870.   The petition further avers that Shepard died March 19, 1876.   This suit was instituted May 14, 1895.   Shepard then knew of the action of the city for six years before his death, and plaintiff

for twenty-five years before she brought this proceeding. The petition affords no explanation for the long delay in the filing of the suit. The ground of complaint, if any there were, is therefore barred by the laches of plaintiff and her ancestor. Burgess v. Railroad, 99 Mo. 496; Kline v. Vogel, 90 Mo. 239; Kelly v. Hurt, 74 Mo. 565.

VALLIANT, J.—Plaintiff brings this suit in equity to divest the defendant city of the title which it holds to a piece of land conveyed to it by plaintiff's father, now deceased, for a certain public use, and to vest the same in plaintiff, as her father's devisee, on the ground that the city has diverted the property from the use for which it was conveyed and applied it to a different purpose.

The defendant demurred to the plaintiff's petition, the demurrer was sustained, and plaintiff declining to plead further, final judgment was rendered for defendant and the plaintiff appeals.

The essential averments of the petition are to the effect that in 1860, Elihu H. Shepard, plaintiff's father, by deed conveyed to the city of St. Louis a piece of land, described in the petition, "for the purpose of a public market to be called Shepard's Free Market" in which all persons having wholesome provisions for sale should be licensed to use and occupy stands free or at nominal rent, and it was expressed in the deed that if within one year from its date, the city should not erect a market house on the lot, then any responsible company might do so upon paying not more than one dollar a year and maintain a market house thereon upon like conditions; that the city accepted the deed, took possession of the lot, erected a market house thereon as required, and maintained the same for about ten years, but after that period ceased to use it for a market house and instead erected an engine house for use of the fire department, and has ever

since used it for such engine house only; that owing to changes in the locality and development of the city it has now become impossible to use the lot for the purposes designed by the grantor and expressed in the deed; that Elihu H. Shepard died in 1876, leaving a will under which, as matters now stand, the plaintiff is sole devisee; the conclusion of the pleader is that, the premises considered, the title to the lot in equity should revert to the plaintiff as the devisee under her father's will, the prayer is that the title be divested of the city and vested in the plaintiff, that the city be enjoined from using the lot for the purpose it is using it, and be required to remove the engine house therefrom, etc.

The only question presented by the record is, should the demurrer have been sustained?

The learned counsel for appellant very clearly demonstrates that if the plaintiff has any rights in the premises at all they are such as are cognizable only in a court of equity. She has no legal title to the land and therefore no standing in a court of law.

The appellant's position is thus stated in her brief:

"By the deed of conveyance and dedication the legal fee in the land passed to the respondent; there was no reversion or re-entry provided for in the deed; the respondent could not lawfully divert the use of the premises from market house purposes to an engine house for the use of the fire department, and, therefore, the appellants have the right to invoke the aid of a court of equity to restrain the respondent from making any other use of the land than that for which it had been conveyed and dedicated, and to compel the execution of the trust if it were possible to execute the same. If, upon the facts before the court, it has become impossible to execute the use, then it was for a court of equity to declare such impossibility, and at the same time a reversion of the title to

the appellant, Mrs. Hand, as devisee of the original donor, and to divest the title out of the respondent, and vest the same in her."

It will not be disputed that one to whom property has been conveyed in trust for a particular use can not lawfully divert it to a different purpose, and if he attempts to do so a court of equity, at the suit of one authorized to sue, will interpose and prevent the misuse and abuse of the trust. But the further proposition, that property that has been so conveyed, absolutely, without provision for reversion, will revert when the trustee abandons the prescribed purpose and attempts to divert it to another use, is one to which we can not assent. Authorities are cited by the learned counsel which sustain the position that where an easement has been created, an abandonment by the grantee of the use will have the effect to restore the property to the grantor freed from the easement, and where title has been conveyed on condition it will revert when the condition fails. But when the title is conveyed absolutely in trust for a given purpose it is not subject to recall by the grantor, and the only power a court of equity has in the premises is to prevent the abuse and compel the trustee to perform the trust precisely or as nearly as possible as prescribed in the grant. A reference to some of the cases chiefly relied on by appellant will illustrate what is here said.

In Cummings v. St. Louis, 90 Mo. 259, there was no express conveyance of the fee to the city in trust for a purpose, but the owners of the land had laid off an addition to the city and on the recorded plat had designated a certain lot "to be and remain a common forever." The court said: "That the proprietors dedicated this parcel of property to public use for a common, by the use of the words above quoted, can not be doubted. For all other purposes, however, they remained the owners." The effect of the plat and

Vol. 158 mo—14

the words of dedication was precisely the same as a dedication of a street by the same method. No fee had gone out from the owners and there was none to return.

Campbell v. Kansas City, 102 Mo. 326, was also a case of dedication by plat. The owners of the land platted had marked a lot "Donated for graveyard." This was in 1847, before our statute in reference to recording plats, but the plat was used publicly, lots were bought and sold according to it, and the public did use the lot in question for a grave-yard until 1857, when the city passed an ordinance vacating it as a graveyard and thereafter used it for another purpose. The plaintiff held the title of the original owners. The court said: "It is clear from the testimony in the record that the original proprietors never devoted this land to the use of a graveyard by any instrument of writing, in the form of deed or plat, sufficient to comply with the requirements of the law relating to the transfer of interests in real estate. It therefore follows that the legal fee must remain still in the original proprietors or their legal representatives. But the actual use of land may be devoted to public purposes without deed or writing of any character. . . . . . . The estate thus parted with does not extend beyond the use of the land, leaving the technical legal fee in the donors, which, how-ever, must be held by them for the donated use as long as that use continues." The case was therefore, in the opinion of the court, only one of a grant of a use in the land, and it was of such a grant that the court in further discussion used this language: "My conclusion is that the plaintiffs in the case made in this record must prevail if the use of the land for a graveyard has been discontinued and abandoned by the public and its representatives. Upon any lawful cessa-tion of the use, the title reverts." Those words must be con-strued in the light of the facts to which they are applied; they were not used in reference to an unlimited fee that had been

conveyed in trust for a particular purpose. Board of Regents v. Painter, 102 Mo. 464, was an action in ejectment in which the plaintiff relied on a deed from the city of Cape Girardeau to whom the land had been deeded for the purpose of a public school; the deed from the city was for the purpose of a normal school. It was held that the deed was invalid. But there was no question of reversion there. Goode v. St. Louis, 113 Mo. 257, is also, relied on by appellant, but it goes no farther in appellant's direction than to hold that property conveyed in trust for one purpose can not lawfully be devoted to another. That was also a dedication by plat, in 1816, a strip on the plat was marked "A" and the words of dedication thereon were, "The land marked 'A' . . . . . . . is to be and remain a common forever." The lot so dedicated became known as Exchange Square, and was for a long time a landing for steamboats and other water craft. Owing to the formation of a sand bar in front it became desirable on the part of the city to extend its wharf line eastward, and negotiations had between the city and the original owners of the land resulted in a deed in 1857 from them whereby the accretions to the old bank were conveyed to the city with a *proviso* that the city should not use Exchange Square for any other purpose than that for which it was originally dedicated. The suit was brought by the representatives of the original owners claiming that the title had reverted to them because the city had ceased to use the land for the purpose for which it was dedicated and was devoting it to other purposes. The decision turned chiefly on the meaning of the word "common" as used on the plat and the conclusion was reached that the purposes for which the land was being used by the city were comprehended within that term, and that therefore the plaintiffs were not entitled to the property. The court then through Judge SHERWOOD goes on to say: "But should it be granted that a diversion of the common from its original

uses had occurred, still this concession would not aid the plaintiffs in their present endeavor to obtain for their own use this valuable property, and for the reason stated in Barclay v. Howell's Lessee, 6 Pet. 498, that 'if this ground had been dedicated for a particular purpose, and the city authorities had appropriated it to an entirely different purpose, it might afford ground for the interference of a court of chancery, to compel a specific execution of the trust, by restraining the corporation, or by causing the removal of obstructions. But, even in such a case, the property dedicated would not revert to the original owner.   The use would still remain in the public, limited only by the conditions imposed by the grant.' "

In Baker v. St. Louis, 7 Mo. App. 429, to which appellant also refers, there was a grant by deed to the city of land for a street and market place with express reservation that when the city should cease to use it for such purpose it should revert to the grantors.   That reservation makes the essential difference between that case and the case at bar.   Occurring in some of the authorities to which we are referred, is the expression, somewhat negative in its form, that the property does not revert to the original owner because of its being diverted to a purpose different from that designated in the grant except when the designated purpose is impossible of execution.   The plaintiff seemingly for the purpose of bringing her case within that exception has averred in the petition that it is now impossible to use this lot for a market house. There will be no necessity for a discussion here of the legal effect of a deed conveying land to a trustee for a purpose impossible of performance in its nature, or even a purpose that should afterwards become impossible of execution, because this petition does not show either such condition.   It alleges that in consequence of the act of the city, that is, the act of building an engine house on the lot, and its location, and

the development of the city, it is now impossible to use it for a market. Thus stated it is a mere conclusion of the pleader and not very logical as such. A demurrer admits only facts pertinently pleaded, it does not admit a conclusion. There are no facts stated in this petition from which the court can conclude as a matter of law that it is now impossible to maintain a market house on the lot in question. The surroundings might be such that from a commercial or economical point of view it would not be the most eligible or advantageous site for a market house, but the deed did not impose the condition that it should be conducted at a profit, or declare that the grantor's benevolent purpose should cease if the scheme should prove unattractive. He made no such condition in his grant, and none such can now be added to it. The fact that a market house was erected and maintained as required for ten years, and no fact appearing on the face of the petition to indicate why the same could not be done now, justifies the conclusion that there is no impossibility in the scheme.

To what is above said may also be added that the plaintiff has acquiesced too long in the alleged disregard of the purpose of the deed to be now entitled to the aid of a court of equity. The court requires reasonable diligence of all who seek its relief. The deed was made in 1860, the city accepted it, built the market house as required and so maintained it for about ten years, that is until about 1870, when it built the engine house; the plaintiff's father was then living and continued in life until 1876; no complaint was made by him and none by the plaintiff until this suit was filed in 1895. Thus for nearly if not quite 25 years, this alleged wrong has continued and no reason is given why it has not sooner been brought to the attention of the court. Even if the plaintiff had a better case than she has on the law, the court would require some explanation of her long acquiescence in the mat-

ter before it would hear her complaint.    The demurrer to the petition was properly sustained, and the judgment of the circuit court is affirmed.

All concur, except *Marshall, J.*, not sitting, having been of counsel.