## J. T. DUCKWORTH, Respondent, v. CITY OF SPRINGFIELD, Appellant.

Springfield Court of Appeals, May 22, 1916.

1. **STREETS: How Made Public.** A public street becomes such either by dedication by the owner, by process of condemnation or by adverse user.

2. **Statute of Limitations: Does Not Run Against Government.** The Statute of Limitations does not run against the United States.

3. **MUNICIPAL CORPORATIONS: Powers: Derived from State.** A municipal corporation derives all its powers from the State and possesses only such powers as its charter from the State gives it.

4. ————: **Streets: Changing Grade: When City Not Liable.** R. S. 1909, sec. 9254, contains the charter powers as to streets of the city of Springfield. The city under a revocable license from the Secretary of War, regraded the sidewalk of an avenue within its limits which was owned by the Federal government and which led to a national cemetery. The city was not liable for injuries to a property owner by such regrading, the acts being *ultra vires*.

5. ————: ————: **Control of.** Where a city extends its corporate limits so as to include a highway formerly controlled by a county, the city thereby acquires control over same.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson*, Judge.

REVERSED.

*Fred A. Moon* and *Frank B. Williams* for appellant.

*Mason & Page* for respondent.

STURGIS, J.—This is a suit for damages caused to plaintiff's property by raising the grade of the street on which plaintiff's property abutted under city ordinances enacted for grading, paving, curbing and sidewalk purposes and by thereafter causing a sidewalk to be constructed on such grade whereby plaintiff's property is left some three feet below such grade. The defendant denies its liability on the ground that any ac-

tion on its part in this respect and whatever it did in this connection by passing ordinances, letting contracts, etc., was *ultra vires.* The basis of this contention by the city is that the street in question, known as the National Boulevard, was not at the time of said street being so improved one of the streets of said city; that the city had no power or jurisdiction to cause such street to be improved and any attempt to do so was utterly void.

The history of this so-called street is that the United States acquired ownership of the National Cemetery some three miles south of Springfield, presumably under authority of section 4870, General Statutes of the United States, relating to such cemeteries. Such ownership was conceded by the Legislature of this State, Laws 1877, page 350, now section 1312, Revised Statutes 1909, ceding to the United States full and entire control and jurisdiction over the land embraced therein. In 1884 the United States purchased from John S. Phelps a strip of land eighty feet wide extending from the then corporate limits of Springfield to said National Cemetery. Said land was conveyed to the United States by warranty deed reciting therein that same is "for the purpose of a roadway from the city of Springfield, Missouri, to the National Cemetery in said Greene County, Missouri, or for building a roadway upon." This strip of land became an entrance to such National Cemetery and for many purposes a part and parcel thereof. The National Government thereafter constructed a roadway thereon known as the National Boulevard and the same has been used as such ever since.

At the trial the following agreement was made by the parties: "It is admitted by the parties that the National Boulevard was at the time of the alleged change of grade a national way of the United States Government extending from Cherry Street in the cit' of Springfield, Mo., for a distance of about three miles, to the National Cemetery, which is a cemetery owned controlled by the United States Government and in which deceased soldiers, only, of said Government are buried; that since the establishment of such roadway,

the United States Government has exercised exclusive control over the same, establishing the grade of the same, macadamizing the same, putting in culverts and waterways, setting out shade trees and caring for them, cutting the grass and weeds each year, and maintaining notices along the same forbidding fast driving and the burning of weeds on the same."

After this roadway was acquired, constructed and graded by the United States, an addition to the city, including the lots in controversy, was platted abutting on this boulevard and the corporate limits of the city have been extended so as to include the same. In 1910 the roadway of this boulevard having already been brought to a grade by the United States, the lot owners and city became desirous of further improving the same by constructing sidewalks thereon. The following permit was thereupon obtained: "The City of Springfield, Missouri, is hereby granted a license *revocable at will* by the Secretary of War to construct and maintain a sidewalk on and along the Springfield National Cemetery Boulevard within the city limits of Springfield, Missouri; this, pending legislation by Congress authorizing the conveyance of that portion of said Boulevard to said city. This license is given subject to the following conditions: 1. That the work herein permitted to be done shall be subject to the supervision and approval of the officer of the United States in charge of the locality in question. Witness my hand this 3rd day of June, 1910. Robert Thaw Oliver, Asst. Sec. of War." Thereupon the city, treating this part of the boulevard as a city street, passed ordinances, the regularity of which is not questioned, causing a sidewalk to be constructed by a contractor in front of plaintiff's property conforming to the grade of the roadway and at the cost of the property owners. The building of this sidewalk caused the alleged damages to plaintiff's property.

That the part of the National Boulevard thus caused to be improved by the construction of this sidewalk is not one of the streets of the city, though within its corporate limits, must follow, we think, from the facts stated. A public street becomes such either by dedication by

the owner (by deed or plat or something equivalent), by process of condemnation, or by adverse user. Here the land was deeded to the United States and continued its property. Though used by the public for travel thereon during the last thirty years, such use by the general public has been purely permissive and not adverse. Besides this the Statute of Limitations does not run against the United States. [25 Cyc. 1006; United States v. Barnes, 31 Fed. 705.] Neither the State nor city had ever assumed to exercise jurisdiction over this highway as such or to take charge of, improve or spend public money thereon. These powers had been exercised by the United States.

The city of Springfield as a municipal corporation derives all its powers from the State of Missouri. It possesses such powers as its charter from the State gives it. [Leach v. Cargill, 60 Mo. 316.] Section 9254, Revised Statutes 1909 contains its charter powers in this respect, and the powers there given to open, improve and control the streets, avenues and alleys are necessarily limited to public streets, avenues and alleys of the city—those highways which in the absence of such grant by the State to the city would be controlled by the State. Unless the road or street is a public one and such as the State or its governmental subdivision has acquired the right to control and improve, then it is not one of the streets of the city. The fact that a roadway over which the public has a permissive use, but which is being maintained and controlled by someone other than the city, and especially when so maintained and controlled by the supreme governmental authority, is within the corporate limits of the city does not make it a street of the city.

The facts here present an entirely different situation than that of a public road in the country over which the State or its subdivision, the county, has control, and which by the extension of the corporate limits of some city comes within such city. In such case it is rightfully held that the control over such highway passes by virtue of the State law from one political subdivision of the State to the other accordingly as the highway is in the one or the other. [Kurtz v. Knapp, 127 Mo. App.

608, 106 S. W. 537; State v. Franklin, 133 Mo. App. 486, 113 S. W. 652; Sec. 10554, R. S. 1909.] That this part of the National Boulevard was not a street of the city and subject to its jurisdiction and control in the matter of making improvements is shown by the fact that, before attempting to construct this sidewalk, the city sought and obtained permission from the United States, revocable at will, to construct and maintain a sidewalk thereon and such permission was given subjecting the doing of any such work to the supervision of the United States.

Under the most favorable view of the case for plaintiff, the city is shown to have constructed this sidewalk on property owned by another and in legal contemplation other than one of the streets or avenues of the city. Where a city makes improvements beyond its authority because outside of its corporate limits or on private property or when there is no valid ordinance authorizing it, the city is not liable for damages arising therefrom. In McQuarter v. St. Joseph, 134 Mo. App. 640, 114 S. W. 1140, where the city had caused a change of grade in a street under a void ordinance, it was held that the city was not liable for damages to an abutting landowner since the void ordinance gave the contractor no authority to do the work. In Maudlin v. City of Trenton, 67 Mo. App. 452, where a city, by its officers, changed the grade of a street without any valid authority, the court held that the city was not liable for damages to an abutting landowner. In Kurtz v. Knapp, 127 Mo. App. 608, 611, 106 S. W. 537, the court assumed that if improvements were made on private property a tax bill therefor would be void because of a lack of authority in the city to make any such improvements and this court directly so held in Springfield v. Baxter, 180 Mo. App. 40, 165 S. W. 366. This court also held in Bigelow v. Springfield, 178 Mo. App. 463, 162 S. W. 750, that a city cannot be held for damages when it attempts to make improvements beyond the scope of its authority. To the same effect are Rowland v. City of Gallatin, 75 Mo. 134; Becker v. Lacrosse (Wis.), 75 N. W. 84, 40 L. R. A. 829; Elliott on Roads and Streets (3 Ed.), secs. 597 to 600.

The temporary permit, revocable at will, given by the United States allowing the city to construct and maintain a sidewalk on this National Boulevard, instead of showing an intention of the landowner to dedicate or grant said land to the city for one of its public streets, evinces an intention to the contrary in that the United States retained its jurisdiction and control over the same as a highway the same as if such permit had been granted to a private person.

It results that the judgment of the trial court is reversed.

*Robertson, P. J.,* and *Farrington, J.,* concur.