Diane DORLON and Steve Dorlon, Plaintiffs–Respondents,

v.

CITY OF SPRINGFIELD, Defendant and Third–Party Plaintiff–Appellant,

v.

BOARD OF REGENTS OF SOUTHWEST MISSOURI STATE UNIVERSITY, Defendant and Third–Party Defendant–Appellant.

Nos. 17520, 17521.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 12, 1992.

Application for Rehearing or Transfer to Supreme Court Denied Dec. 2, 1992.

Application to Transfer Denied Jan. 26, 1993.

John R. Lightner, C. Ronald Baird, Dorr, Baird and Lightner, P.C., Springfield, for plaintiffs-respondents.

Nancy Kelley Yendes, Asst. City Atty., Springfield, for defendant, and third-party plaintiff-appellant City of Springfield.

Ransom A. Ellis, Jr., John F. Black, Lester J. Boyle 3d, Ellis, Ellis & Black, Springfield, for defendant and third-party defendant-appellant Board of Regents of Southwest Missouri State University.

MONTGOMERY, Judge.

Defendants, City of Springfield (City) and Board of Regents of Southwest Missouri State University (Regents), appeal from a judgment entered after a jury verdict in favor of Plaintiffs, Diane and Steve Dorlon (Diane and Steve). The Dorlons are husband and wife. The claim arose from Diane's slip and fall on a sidewalk located on the south side of Monroe Street approximately 120 yards east of the intersection of Monroe Street and Hammons Parkway in Springfield, Missouri.

The jury assessed Diane's damages at $310,000 and Steve's damages at $30,000

for his loss of consortium claim. Fault was assessed by the jury at 70 percent to the City, 25 percent to the Regents, and 5 percent to Diane. Thereafter, judgment was entered in accordance with the jury verdict.

By a Petition filed December 29, 1988, Diane alleged her injuries resulted from catching her foot in a gaping hole in the sidewalk and falling down. Steve alleged loss of consortium resulting from his wife's injuries. The City filed a third party petition against the Regents as the abutting landowner alleging that special uses of the sidewalk caused the Regents to be solely liable for Plaintiffs' damages. Afterwards, Plaintiffs amended their Petition naming the Regents as an additional Defendant with the City. The amended petition alleged, in the alternative, that Diane tripped over a raised portion of the sidewalk.

As a sponsor of a cheerleading group from Walnut Grove, Missouri, Diane attended a cheerleading camp at Southwest Missouri State University. On August 8, 1988, Diane and her cheerleading group were enroute from their dormitory to Hammons Student Center for evening activities. Their route placed them on the sidewalk on the south side of Monroe Street adjoining the campus. Diane was walking behind her cheerleading group surrounded by other participants in the camp when she tripped on the sidewalk and fell. She testified she stubbed her toe on a raised chunk of concrete. Other witnesses described the raised portion of concrete as about an inch to inch and a half high. The extent of Diane's injuries is not in dispute.

*APPEAL NO. 17521 (REGENTS)*

Point I of the Regents' appeal claims the trial court erred in denying the Regents' motion for a directed verdict and judgment notwithstanding the verdict because the Regents are "sovereignly immune from suit in tort and have not waived such immunity." [1]

---

**1.** Neither Dorlons nor the City dispute that the Regents are entitled to sovereign immunity under § 537.600, absent waiver. *See Todd v. Curators of Univ. of Missouri,* 347 Mo. 460, 147

S.W.2d 1063, 1064 (1941); *Krasney v. Curators of Univ. of Missouri,* 765 S.W.2d 646, 649 (Mo. App.1989); *Anderson v. State of Missouri and*

■ We review this point and those of the City mindful that a "directed verdict is a drastic action which should only be granted if reasonable and honest persons could not differ on the disposition of the case." *Hawkins v. Compo*, 781 S.W.2d 128, 133 (Mo.App.1989). Furthermore, we must review the denial of a motion for a directed verdict as a question of law, and evidence and inferences therefrom are viewed in the light most favorable to the non-moving party. *Fricke v. Valley Prod. Credit Ass'n*, 721 S.W.2d 747, 752 (Mo.App.1986).

Prior to the joinder of the Regents, the Dorlons submitted request for admissions under Rule 59.01[2] to the City. In response, the City admitted it "owns the 200 yards of sidewalk on the south side of Monroe Street East of the Monroe Street–Hammons Parkway intersection."[3] After the joinder of the Regents, the court denied the City's request to amend its response concerning ownership of the sidewalk.

Both the Regents and the Dorlons contend such admission conclusively establishes the City's ownership of the sidewalk where Diane was injured. Lack of ownership of the sidewalk is the basis for the Regents' claim of sovereign immunity. Therefore, according to the Regents, Diane was injured on the City's property, not property of the Regents.

Rule 59.01(b) provides, in part:

Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

Assuming, without deciding, the City's admission conclusively established it owned the sidewalk, such admission requires our determination of the property interest owned by the City. The City and Dorlons argue the City's "ownership" of the sidewalk is ownership of an easement for public use, not a fee simple absolute. Consequently, Dorlons say the Regents, as abutting landowner, own the property to the center of Monroe Street. By this reasoning, it is said Diane was injured on the property of the Regents eliminating sovereign immunity by virtue of § 537.600.1(2).[4] That section provides:

Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

. . . .

(2) Injuries caused by the condition of *a public entity's property* if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.... (emphasis added)

The sidewalk in question lies within the area which was platted as Laclede Addition, dedicated and accepted by the City in 1903. The plat shows the dedication of 30 feet on either side of the centerline of Monroe Street. Well after 1903 the Regents acquired the real estate south of Monroe Street and where Diane was injured.

Section 445.010, et seq., and their predecessors earlier than 1903, provide an order-

*Board of Regents for Central Missouri State Univ.*, 709 S.W.2d 893, 896 (Mo.App.1986).

---

**2.** Rule references are to Missouri Rules of Court (1992), unless otherwise indicated.

**3.** It is undisputed that the defect was located in this 200 yards of sidewalk.

**4.** Statutory references are to RSMo 1986, unless otherwise indicated.

ly method of dedication of real estate for public use. Section 445.070.2 provides:

> Such maps or plats of such cities, towns, villages and additions made, acknowledged, certified and recorded, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town or village, when incorporated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose.

Numerous cases hold that dedication of land for public uses under our statutes conveys to the City "not a fee simple absolute but a fee in trust to use the property for public purpose, or as sometimes said, an easement for public use. Such defeasible fee is burdened by possibility of reverter to the dedicator or his successors if the property is abandoned by the City." *Land Clearance for Redevelopment Auth. v. City of St. Joseph*, 560 S.W.2d 285, 287 (Mo.App.1977), *citing Ginter v. City of Webster Groves*, 349 S.W.2d 895, 899 (Mo. 1961); *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 593 (Mo.App.1960); *Roy F. Stamm Electric Co. v. Hamilton–Brown Shoe Co.*, 350 Mo. 1178, 171 S.W.2d 580, 582, 583 (banc 1943); *Gaskins v. Williams*, 235 Mo. 563, 139 S.W. 117 (1911); *State ex rel. State Highway Comm'n v. Johns*, 507 S.W.2d 75, 77 (Mo.App.1974); *Hand v. City of St. Louis*, 158 Mo. 204, 59 S.W. 92 (1900); *Neil v. Independent Realty Co.*, 317 Mo. 1235, 298 S.W. 363, 370 (1927).

Therefore, as successor in interest to the dedicator of Laclede Addition, the Regents own a possibility of reverter of 30 feet south of the centerline of Monroe Street, and the City owns a defeasible fee in trust of that property.

"The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *City of Willow Springs v. Mo. State Librarian*, 596 S.W.2d 441, 445 (Mo. banc 1980); *State ex rel. Metro. St. Louis v. Sanders*, 807 S.W.2d 87, 88 (Mo. banc 1991). Provisions of the entire legislative act must be construed together and harmonized, if reasonably possible. *Alexander v. State*, 756 S.W.2d 539, 541 (Mo. banc 1988).

▮ We do not believe ownership of a possibility of reverter is the type of property interest which the legislature intended to exclude from sovereign immunity protection under § 537.600.1(2). The phrase in that section, "[i]njuries caused by the condition of a public entity's property ...," clearly refers to ownership of a property interest which allows a public entity to control the property. *See Claspill v. State Div. of Economic Dev.*, 809 S.W.2d 87, 89 (Mo.App.1991). Unless that is true, other language in the statute would be superfluous. Under subsection 2 sovereign immunity is waived only if "either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition." This language clearly refers to conditions on a public entity's property where employees perform work in the course of their employment. It also refers to dangerous conditions on such property where corrective measures are necessary. In each instance, a public entity must control the property in order to take appropriate actions.

To adopt Dorlons' view of this section would greatly expand the waiver of sovereign immunity. It would require public entities to be constantly alert for any reversionary interest adjacent to public ways with a watchful eye for potentially dangerous conditions even though controlled by others. Such a burden is beyond the intent of the legislature.

Maintenance of a sidewalk dedicated to the City is not an activity required to be carried out by the Regents. That duty is expressly delegated to the City after dedication and acceptance of the property is complete. The City concedes "[t]he general rule is that the municipality has a nondelegable duty to maintain the improved

public right-of-way as a result of accepting the dedication to the public of the right-of-way," citing *Schmidt v. Keane,* 810 S.W.2d 701, 702 (Mo.App.1991).

Section 82.190, RSMo 1986[5], vests the City with "exclusive control over its public highways, streets, avenues, alleys and public places," and the City does not dispute its authority to control the sidewalk in question. The Regents have no right or obligation to control or maintain the sidewalk regardless of their reversionary property interests.

After *Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo.banc 1977), the legislature reinstated sovereign immunity. § 357.600, RSMo 1978. Since the latter date sovereign immunity has been the rule for all public entities unless a particular statutory exception is applicable. *Bartley v. Special School Dist. of St. Louis County,* 649 S.W.2d 864, 870 (Mo.banc 1983). "[S]tatutory provisions that waive sovereign immunity must be strictly construed." *Id.* at 868. *See State ex rel. New Liberty Hosp. Dist. v. Pratt,* 687 S.W.2d 184, 186 (Mo.banc 1985). Only a liberal construction of the statute would allow a waiver of sovereign immunity where injuries result from a condition of a public entity's property over which it had no control. Therefore, the statute, strictly construed, provides immunity to the Regents under the facts of this case, and we so hold. Because of the Regents' immunity, their remaining points require no discussion.

That portion of the judgment in favor of Diane and Steve against the Regents must be reversed.

### *APPEAL NO. 17520 (CITY)*

The first point of the City reads:

**5.** It is undisputed the City of Springfield is a constitutional charter city to which § 82.190 applies. *State ex rel. Rhodes v. City of Springfield,* 672 S.W.2d 349, 352 n. 1 (Mo.App.1984).

**6.** § 537.600.6 provided:
Pursuant to the prerogative of the general assembly to declare the public policy of the state in matters concerning liability of the state in matters concerning liability in tort, the general assembly declares that prior to September 12, 1977, there was no governmen-

The trial court erred in not limiting plaintiff Diane Dorlon's damages and reducing the verdict in her favor to $100,-000.00 because plaintiffs' claims of ... the trip and fall on a sidewalk come within the provisions of Section 537.600 et seq. RSMO 1986, in that the restriction of $100,000.00 found in Section 537.610.2, RSMO 1986, is applicable to all claims arising out of conditions of property alleged to be owned by a municipality regardless of the character of the function involved.

After the briefs of the parties were filed but before oral argument, the Supreme Court decided *Wollard v. City of Kansas City,* 831 S.W.2d 200 (Mo. banc 1992), on April 21, 1992. There, Mrs. Wollard slipped and fell on a sidewalk owned by the City of Kansas City. She received a jury verdict of $800,000 less her fault assessed at thirty-three percent. The trial court limited her recovery to $100,000 pursuant to § 537.610.2. That section limits recovery to $100,000 against the State and its public entities for any one person in a single accident or occurrence. The Supreme Court decided Mrs. Wollard's claim fell within the scope of §§ 537.600 through 537.650 and thus was subject to the limitation of § 537.610.2.

After the *Wollard* decision and still before oral argument, the General Assembly passed H.S.H.C.S.S.S. # 2 S.C.S.S.B.s 504, 548 and 538. Contained within that legislation was a revision to § 537.600 apparently in direct response to the holding of *Wollard.* The relevant provision is set forth marginally.[6] At the conclusion of oral argument, we requested the parties file supplemental briefs addressing the effects of *Wollard* and the revision of § 537.600 on

tal or sovereign immunity for, and no limitation on causes of action arising out of, proprietary functions of municipalities or municipal corporations, and that policy is hereby reaffirmed and declared to remain in effect. Such was the original legislative intent of subsection 1 of section 537.600 and any decision subsequent to August 13, 1978, holding to the contrary erroneously interprets the law and public policy of this state.

this case. We now have the benefit of those supplemental briefs.

Another twist in this case occurred on July 9, 1992, when Governor Ashcroft vetoed H.S.H.C.S.S.S. # 2 S.C.S.S.B.s 504, 548 and 538. Thereafter, appellants' motion for rehearing in *Wollard* was denied on July 21, 1992. Thus, the Supreme Court had ample opportunity to digest both the revision to § 537.600 and the Governor's veto prior to the denial of Wollards' motion for rehearing.

▪ Turning to the merits of this point, it is immediately apparent *Wollard* controls our decision despite Dorlons' plea to the contrary. They argue their claim against the City is not within the scope of §§ 537.600 to 537.650. They believe their claim is based on "common law principles under which the City has always had responsibility and for which it has never been afforded sovereign immunity." In short, Dorlons advance the same arguments as made by Wollards at 831 S.W.2d at 202.

Those arguments were answered by the Supreme Court saying, "To adopt the Wollards' suggested interpretation requires blatant disregard of the clear legislative intent to encompass a claim against a municipal corporation public entity for injury resulting from a dangerous condition of its sidewalk within the scope of sovereign immunity §§ 537.600 through 537.650." *Id.* at 205. This contention of Dorlons is rejected.

Next, Dorlons urge the City incorrectly contends that § 537.610.2 applies to this case. That section provides:

The liability of the state and its public entities on claims within the scope of Sections 537.600 to 537.650, ... shall not exceed one hundred thousand dollars for any one person in a single accident....

To support their position, Dorlons say a municipal corporation is not a political subdivision of this state and therefore not one of the State's public entities for purposes of § 537.610. They rely on *State ex rel. Trimble v. Ryan*, 745 S.W.2d 672 (Mo. banc 1988), and *State ex rel. St. Louis Housing v. Gaertner*, 695 S.W.2d 460 (Mo. banc 1985). These cases do not aid Dorlons.

Neither case holds that a municipal corporation is not a public entity entitled to the monetary limitation of § 537.610.2.

▪ We are convinced the City is a public entity entitled to the protection of § 537.610.2 given the language of *Wollard* and subsequent cases. The 1985 amendment to § 537.600 provides that the express waivers contained in § 537.600.1(1) and (2) are absolute waivers "whether or not the public entity was functioning in a governmental or proprietary capacity...." Even though the parties in *Wollard* did not "dispute that the City of Kansas City, a municipal corporation, is a 'public entity' within the meaning of §§ 537.600 and 537.-610," 831 S.W.2d at 201, the Court discussed the 1985 amendment. The Court noted that the only public entity subject to the governmental/proprietary distinction at the time of the enactment of § 537.600.2 was the municipal corporation. The Court then said, "Since municipal corporations are the only public entities the legislature intended to subject to the governmental/proprietary distinction, logic dictates that the legislature must have intended to include torts arising from a municipal corporation's proprietary functions within the scope of (1) and (2)." *Id.* at 203–04. If a municipal corporation is a public entity under § 537.600, it must follow that the legislature intended the same treatment of a municipal corporation under § 537.610.

Our view is fortified by *Stacy v. Truman Medical Center*, 836 S.W.2d 911 (Mo. banc 1992, modified September 22, 1992). *Stacy* involved a "Chapter 355 not-for-profit corporation, which [was] not controlled by or answerable to public officials, public entities or the public itself...." *Stacy*, 836 S.W.2d at 921. As a result, the entity was not entitled to sovereign immunity under § 537.600. The three tests elaborately spelled out in *Stacy* for determining whether an entity is a public entity, 836 S.W.2d at 918–19, convinces us the City of Springfield is a public entity as that term is used in § 537.610.2. *See Balderree v. Beeman*, 837 S.W.2d 309 (Mo.App.1992).

Finally, Dorlons contend the veto of H.S.H.C.S.S.S. #2 S.C.S.S.B.s 504, 548 and 538 is immaterial to our decision because the legislative intent was clearly shown by that legislation. They say we should acknowledge that legislative intent without regard to *Wollard*. The short answer to that proposition lies in the constitution of this state. We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo.Const. art. V, § 2 (1945); *Wilson v. State,* 818 S.W.2d 723, 725 (Mo.App.1991). Accordingly, we reject Dorlons' contention on the basis of the *Wollard* decision.

Erroneously, the trial court did not limit Diane's damages under § 537.610. The judgment exceeding $100,000 as to Diane must be reversed, and a judgment entered for $100,000 against the City in favor of Diane.[7]

The City's second point requires no discussion in view of our holding that the Regents are protected by sovereign immunity. That point raises the issue of the total monetary liability of two public entities under § 537.610.

The City's last three points contend the trial court erred in denying its motion for directed verdict at the close of Plaintiffs' case and all the evidence and denying its motion for judgment notwithstanding the verdict because:

(Point III) Plaintiffs' notice letter sent under § 82.210, RSMo 1986, was defective since the description of the sidewalk defect and the manner of falling differed from the evidence at trial;

(Point IV) Plaintiffs failed to make a submissible case in that no evidence was adduced sufficient for the jury to find:

(1) actual or constructive notice to the City of the condition of the sidewalk, and

(2) the condition of the sidewalk caused Diane to trip and fall;

(Point V) The City owed no duty to Plaintiffs with respect to the sidewalk defect since that duty had shifted to the abutting landowner when it changed the condition of the sidewalk and continued a special use of it.

As to Point III, requirements of the written notice, § 82.210 provides:

No action shall be maintained against any city of this state ... on account of any injuries growing out of any defect in the condition of any ... sidewalk ... until notice shall first have been given in writing ... within ninety days of the occurrence ..., stating the place where, the time when such injury was received, and the character and circumstances of the injury....

Diane's written notice to the City describing the defective sidewalk and character and circumstances of falling stated:

"This injury claim arises out of a defect in the condition of a city sidewalk ... [Diane] stepped in a large hole in the sidewalk, stubbing her toe against the concrete edge of the hole. This caused [Diane] to fall forward, landing on the concrete with her right knee, left hand and left elbow...."

Prior to receiving Diane's written notice the City investigator talked with Diane's attorney. With the information he provided, the investigator "found the 'defect' described, a hole in the walk, photographed same, and left." According to the City's brief, "[a]n examination of all photographs taken of the scene of the hole shows that as far as the eye can see, it is the only defect in the sidewalk."

Diane testified at trial she did not step in a hole but stubbed her toe on a raised chunk of concrete. The City argues such evidence shows the written notice failed to accurately describe the defect and recovery is precluded. We disagree.

The City does not complain the written notice failed to pinpoint the location of the "defect." In fact, the City investigator found the only "defect" in the area of the fall for as far as the eye can see. If Diane did not truthfully describe her fall to the jury, the City was armed with evidence to prove otherwise.

---

7. We note the City has raised no point on this appeal concerning the effect of § 537.610.2 on the total judgment of Diane and Steve. For that reason, we do not discuss the issue.

In *Travis v. Kansas City*, 491 S.W.2d 521 (Mo.banc 1973), the Supreme Court overruled *Hackenyos v. City of St. Louis*, 203 S.W. 986 (Mo.1918), and quoted the following, with approval, from the dissent in *Hackenyos:*

> "The statute does not contemplate that the notice shall be so certain and definite in terms as to notify the city officers with such precision that they may with perfect confidence rely upon the correctness of the notice, and proceed with the trial of the cause without making an investigation of the facts of the case. However desirable that might be on the part of the officers, yet all of the authorities hold that they must arm themselves with the notice, and, with the assistance of its light, make an investigation and ascertain the truthfulness or the falsity of the statements contained in the notice."

491 S.W.2d at 523. " 'The question of the sufficiency of the notice is for the court and not the jury.' " *Id.* at 522.

Here, the court concluded Diane's notice was sufficient and denial of the City's motion for directed verdict will not be disturbed unless so erroneous "there is no room for reasonable minds to differ." *McCarthy v. Wulff*, 452 S.W.2d 164, 168 (Mo.1970).

The City relies on *Jones v. City of Kansas City*, 643 S.W.2d 268 (Mo.App.1982), and *Quinn v. Graham*, 428 S.W.2d 178 (Mo.App.1968). Neither case aids the City.

In *Jones*, the notice located the "defect" of the street at or near 4208 Pennsylvania Street. No such address existed but the city investigator found the defect near 4200 Pennsylvania Street. The Court said:

> If the review discloses a great variance between the notice and the proof relative thereto, the discrepancy will be considered fatal. The notice requirement is in derogation of the common law of torts and is, therefore, to be construed strictly against the municipality and liberally in favor of a plaintiff with the result that substantial compliance is sufficient.

643 S.W.2d at 270 (citations omitted). The Court concluded the record showed no fatal variance between the notice and the supporting proof. *Id.*

In *Quinn*, plaintiff's notice to the city advised, " 'while walking on the sidewalk ... she slipped causing her to immediately fall....' " 428 S.W.2d at 185. We said that "[t]he notice is wholly void of any reference to or suggestion that any defect or negligent act of the city caused or produced the fall 'upon the sidewalk.' " *Id.* Plaintiff's testimony was only that she tripped and fell. We held that "[t]he notice in this case, as regards its contents, is so indefinite in stating 'the place where' and the 'circumstances of the injury' as to be misleading to city officials in attempting to ascertain the place and cause of the casualty." *Id.* at 186.

■ Unlike *Quinn* and *Jones*, Diane's notice did not mislead the City officials in locating the place or cause of her casualty. The City does not deny locating precisely the "defect" in the sidewalk. The City argues a fatal variance arose between the notice (stubbing toe against concrete edge of hole) and Diane's testimony (tripping over raised portion of the sidewalk). The City was provided with a notice which pinpointed the "defect" and allowed the City to fully investigate the truthfulness of statements contained in the notice. Regardless of the hole, the City was notified Diane tripped over the concrete edge of a defect in the sidewalk. Her testimony did not fatally vary from that fact.

Applying a liberal construction of Diane's notice with a strict construction against the City, the trial court committed no error since substantial compliance with the notice requirement is sufficient. *Jones*, 643 S.W.2d at 270. Point III is denied.

■ As to Point IV, where the City claims Dorlons failed to make a submissible case, we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence. *Georgescu v. K Mart Corp.*, 813 S.W.2d 298, 299 (Mo. banc 1991). "The jury is the sole judge of the credibility of the witnesses and the weight and value of their testi-

mony and may believe or disbelieve any portion of that testimony." *Id.*

■ The City first correctly asserts that "[a] city is entitled to reasonable time after it obtains knowledge, actual or constructive, of a dangerous condition of the street in which to repair the condition and that it is not liable until it has neglected such opportunity...." *Moses v. Kansas City Public Serv. Co.,* 239 Mo.App. 361, 188 S.W.2d 538, 547 (1945). Obviously, the same rule applies to a city sidewalk. *Lithegner v. City of St. Louis,* 125 S.W.2d 925, 929 (Mo.App.1939).

> There is no fixed rule as to the length of time necessary to justify a presumption of notice to a city of a dangerous condition on a public street or sidewalk. Each case must depend upon the facts and circumstances shown therein.

*Word v. City of St. Louis,* 617 S.W.2d 479, 481 n. 1 (Mo.App.1981). A city is liable for an unsafe street condition "where the dangerous and defective condition is of such nature, even though not 'obvious and notorious,' and has existed for such a length of time that the city in the exercise of ordinary care could and should have discovered and remedied it." *Rittershouse v. City of Springfield,* 319 S.W.2d 518, 522 (Mo.1959). "The question of whether a city, in the exercise of ordinary care, would have discovered the condition a sufficient length of time prior to plaintiff's injury to have removed it and thereby prevented the injury is to be determined by the jury." *Douglas v. City of St. Louis,* 823 S.W.2d 78, 79 (Mo.App.1991).

■ Viewing the evidence in the most favorable light to the verdict and giving Diane the benefit of all reasonable inferences, the record here convinces us Diane made a submissible case on the issue of constructive notice.

Steve Brady, expert witness for the City, testified he reviewed photographs which showed the edges of the sidewalk around the defect were rounded rather than sharp breaks. He believed the rounded edges were probably caused by traffic over the area, but he saw nothing in the photographs inconsistent with a gradual deterioration of the sidewalk. A grounds keeper for the University testified he was aware of the defect in the sidewalk in 1988, indicating it was a gradual, slow deterioration. He stated the defect started out as a small crack, then became multiple cracks and got larger for several summers before 1988. James Barber, street superintendent for the City, testified the defect in the sidewalk could have been caused by the weather, i.e., "[i]t could have froze or something." He indicated most sidewalk cracking occurs in the wintertime and early spring as a result of the freezing and thawing cycle.

From this evidence a jury could reasonably infer the defect had existed long enough for the City, using ordinary care, to have discovered and remedied the unsafe condition. *Douglas,* 823 S.W.2d at 80.

■ Finally, under Point IV, the City claims "[t]he evidence is more consistent with [Diane] either fainting or tripping on her own shoes or someone else in the crowd than tripping on any defect in the sidewalk." This argument ignores Diane's testimony that she tripped over a raised chunk of concrete. Her testimony is direct evidence of causation which the jury was free to believe or disbelieve. *Georgescu,* 813 S.W.2d at 299. Simply stated, the jury disbelieved the City's evidence on the issue of causation. The facts, viewed in the light most favorable to the verdict, reveal a submissible case was made by Diane on both the issue of constructive notice and causation. Point IV has no merit.

Regarding Point V, the City argues it was "entitled to a directed verdict and to a judgment notwithstanding the verdict as the duty to maintain the sidewalk shifted to the [Regents] first as a state entity asserting control over the right-of-way, and secondly as an abutting property owner who affirmatively altered forever the sidewalk for its own special use and continuing special uses."

Having decided immunity applies to the Regents, we must still address the City's contentions remaining under its Point V. The City believes the existence of the Regents' immunity, as abutting landowner, in no way shifts the duty to maintain the

sidewalk back to the City. It argues that actions by the Regents regarding the sidewalk relieved the City of any duty to the Dorlons.

Relevant facts supporting the City's theory reveal in 1967 the Regents built tennis courts south of Monroe Street. In order to drain the tennis courts, a slab of the sidewalk was removed and a drainage pipe was placed thereunder. The Regents then repoured the slab of sidewalk where Diane fell. The City claims the Regents failed to obtain the required City permit for the work. Some evidence revealed the repoured slab did not meet the City's specifications as to proper depth. In contrast, Harold Schulte, Director of Campus Development, testified it was his practice to take plans for every campus project to the City and "not once to me was I ever told that you need a permit." Although Schulte could not be certain he took the tennis court plans to the City, he had no reason to believe he did not. Other evidence revealed employees of the Regents drove maintenance vehicles, including a small farm tractor with a snow blade, over and across the sidewalk area in question. Ground crews also used calcium chloride on the sidewalk for snow and ice removal.

Other facts are inconsistent with the City's contention that the duty to maintain the sidewalk shifted to the Regents starting in 1967. Bob Turner, the City's acting director of public works, testified the City had maintained the sidewalk in question since 1903. He acknowledged the City had never "relinquished its easement ... its ownership of this property to anyone." The City actually repaired the sidewalk defect in the Spring of 1989. Don Evans, City sidewalk inspector, testified the City sidewalks are inspected only on a complaint basis. He stated the sidewalk in question was inspected by him in 1989, and he authorized repairs. Other sidewalk repairs were made at the same time in the general area. Jerry Patton, Vice President of Administrative Services for the University, testified he notified the City in 1987 that sidewalks around the school were in bad shape. He stated the same type calls were made three or four times to the City in 1988.

With this factual background the City contends (1) under the "doctrine of reclamation," the City has been relieved of any duty to maintain the sidewalk or (2) the abutting landowner exception to municipal liability applies to relieve the City of liability.

■■■■ In advancing the reclamation doctrine, the City relies on *Treon v. City of Hamilton*, 363 S.W.2d 704 (Mo.1963), and *Duckworth v. City of Springfield*, 194 Mo. App. 51, 184 S.W. 476 (1916). Neither case supports the City's contention and neither case mentions nor defines the doctrine of reclamation.

*Duckworth* arose when the City constructed a sidewalk on property owned by the United States. The City sought and obtained permission from the United States to construct and maintain the sidewalk which was outside its corporate limits. Plaintiff suffered damages to his abutting property when the City raised the grade where the sidewalk was constructed. The Court held that "[w]here a city makes improvements beyond its authority because outside of its corporate limits or on private property or when there is no valid ordinance authorizing it, the city is not liable for damages arising therefrom." *Id.* at 478.

In *Treon*, a portion of Highway 13 was relocated in the City of Hamilton. After the construction of the new portion of Highway 13, the old portion of the highway was "relinquished" to the city and the state ceased maintaining it. A motorist was killed when his automobile ran into a ditch along the old portion of the highway relinquished to the city. Plaintiff was granted a new trial after a verdict for the city, and the city appealed without success. The trial court's order granting the new trial was affirmed because "plaintiff made a submissible case of negligence on the City's failure to barricade or warn." 363 S.W.2d at 708. The Court further said, "A city has a non-delegable duty to maintain its streets in a reasonably safe condition or to warn of dangers and defects." *Id.* Based on *Duckworth* and *Treon*, we hold the actions of the Regents did not relieve the City of any liability to Dorlons.

Finally, the City urges that when an abutting landowner creates a dangerous condition on a public sidewalk, the City is relieved of liability for injuries resulting from such condition. The City argues the Regents "placed in the City's right-of-way a sidewalk slab without the City's permission in violation of a City Ordinance requiring a permit. Having done so, [Regents] owed as a matter of law a duty to the travelling public to maintain what it built."

In support of this theory, the City relies mainly on *Schmidt v. Keane,* 810 S.W.2d 701 (Mo.App.1991). There, plaintiffs sued the abutting landowners and the City of St. Louis. The trial court directed a verdict in favor of the landowners. The jury returned a verdict in favor of the City. Plaintiffs appealed contending they " 'had established a submissible case of negligence against the [abutting landowners]....' " *Id.* at 702. Plaintiff's only other point was not properly preserved for review. The decision in *Schmidt* does not stand for the proposition for which the City contends since the liability of the city to plaintiffs was not an issue on appeal.

*Rauh v. Interco, Inc.,* 702 S.W.2d 497 (Mo.App.1985), states: "[T]he general rule in Missouri is that the affirmative duty to maintain public sidewalks rests on the municipality." *Id.* at 500–01. Two standard exceptions apply to this rule. The first is termed the " 'special use exception.' " This exception applies when "an abutting property owner has made use of the public sidewalk for some other purpose than merely using them as a public sidewalk, such as a driveway, or where the abutting owner puts an obstruction on the public sidewalk which was not a part of the public sidewalk as originally constructed in order to serve his own purposes." *Id.* at 501.

The second exception is that "an abutting property owner may be held liable if he artificially created, through negligence

or affirmative action, a condition which makes passage unsafe." *Id.*

We need not decide whether actions of the Regents fall within either exception since we have determined immunity applies to them. Assuming actions of the Regents fell within one or both exceptions we must determine if the City then is relieved of liability. As earlier noted, the City cites no case supporting its position on this issue.

Our research leads us to a view contrary to that of the City.

A municipal corporation, whether by contract or ordinance delegating the construction and care of its streets and sidewalks to a private individual or corporation, or even to a quasipublic corporation, cannot thereby evade its responsibility for such care and supervision and thus escape liability for any damage resulting from the failure of the person or corporation, to whom such care and supervision are delegated, to use that ordinary care and diligence to keep such streets or sidewalks in a reasonably safe condition for travel, which devolves primarily upon the municipal corporation itself. *The primary obligation to maintain public sidewalks in a reasonably safe condition rests upon the municipality.*[8] This obligation belongs to the municipality itself and is a continuous one which cannot be avoided, evaded, or suspended[,] or delegated, surrendered or abdicated, or shifted to others by any act of the municipality, either by contract or ordinance, although another may also be liable, of course. This obligation and liability may continue even where state, county, or federal agencies are involved. McQuillin Mun. Corp. § 54.17 (3rd Ed) (emphasis added).

In *Schweizer v. City of Maplewood,* 784 S.W.2d 842 (Mo.App.1990), plaintiff sued both Metropolitan St. Louis Sewer District (MSD) and the city after she was injured

**8.** To support the statement in italics, the author cites the following Missouri cases: *Frogge v. Nyquist Plumbing and Ditching Co.,* 453 S.W.2d 913 (Mo.banc 1970); *Sutton v. Fox Missouri Theatre Company,* 336 S.W.2d 85 (Mo.1960); *Fosmire v. Kansas City,* 260 S.W.2d 252 (Mo. 1953); *Shafir v. Carroll,* 309 Mo. 458, 274 S.W. 755, 757 (1925); *Stifel v. City of St. Louis,* 181 S.W. 577, 581 (Mo.1915); *Schlinski v. City of St. Joseph,* 170 Mo.App. 380, 156 S.W. 823 (1913); *Benton v. City of St. Louis,* 217 Mo. 687, 118 S.W. 418, 421 (1909); *Burgess v. Kansas City,* 242 S.W.2d 591 (Mo.App.1951).

from falling on a city sidewalk. She stepped onto a manhole cover sewer lid and concrete slab surrounding it. The lid collapsed, causing her to fall in the hole. Plaintiff later dismissed her action without prejudice against MSD.[9] The appellate court reversed the trial court's grant of the city's motion for summary judgment. The court noted the sidewalk in question was public property even though the city had transferred complete custodianship of a portion of the sidewalk to MSD and as a result, MSD had the exclusive right to operate, maintain, and control the sewer area. The Court then said:

> MSD's control over the property notwithstanding, City was not relieved of its duty to the public regarding defects in its sidewalk. We acknowledge that the maintenance of the sewer was the responsibility of MSD. Although City did not have the duty to repair and maintain that portion of its sidewalk, nothing in the transfer of custodianship of that section of the sidewalk to MSD operated to eliminate City's duty to warn of a dangerous condition in that section of the sidewalk. City's duty to protect the public from a dangerous condition in its sidewalk continued.

*Id.* at 843–44 (footnote omitted).

The early case of *Benton v. City of St. Louis,* 217 Mo. 687, 118 S.W. 418 (1909), most succinctly states the law in this area.

> A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounded duty of keeping them free from nuisances, defects, and obstructions caused by itself *or by third parties* if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction, or repair the defect. It cannot shirk that duty, *or shift it over to,* or halve it with, others. So much is clear law in Missouri.

*Id.* at 421 (emphasis added).

In the instant case we are not concerned with joint liability of the City and another

wrongdoer nor any right of indemnification by the City from such wrongdoer. A discussion of those issues may be found in McQuillin Mun. Corp. § 54.47 (3rd Ed).

Regardless of the actions of the Regents, we hold the City was not relieved of its duty to Diane regarding defects of its sidewalk. Point V is denied.

In summary, the judgment against the Regents is reversed and the cause remanded with directions that the court amend its judgment to provide that Dorlons not recover from the Regents. Diane's judgment against the City is reversed to the extent it exceeds $100,000, and the cause is remanded with directions that the court amend its judgment to provide for judgment in favor of Diane against the City in the amount of $100,000. For the reason noted in n. 7, *supra,* that portion of the judgment awarding Steve $28,500 must remain undisturbed.

FLANIGAN, C.J., and SHRUM, P.J., concur.

---

9. We suspicion plaintiff dismissed against MSD because of its probable sovereign immunity. "In order to maintain a cause of action against MSD, however, a plaintiff must overcome the sovereign immunity hurdle." *Schweizer,* 784 S.W.2d at 843 n. 2.