Denise O'NEIL, for and on behalf of Shannon O'NEIL, a minor, and Irene O'Neil, Plaintiffs–Appellants,

v.

ADM GROWMARK RIVER SYSTEMS, INC., Defendant–Respondent.

No. 63228.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 28, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 1994.

Application to Transfer Denied March 22, 1994.

Francis X. Duda, Craig A. Sullivan, Anderson, Gilbert & Garvin, St. Louis, for plaintiffs-appellants.

John G. Enright, Kortenhof & Ely, St. Louis, for defendant-respondent.

SMITH, Judge.

Appellants, Denise O'Neil, for and on behalf of Shannon O'Neil, a minor, and Irene O'Neil, appeal from an order of summary judgment in favor of Respondent, ADM Growmark River Systems, Inc., hereinafter ADM Growmark. The trial court's order of summary judgment dismissed a wrongful death action brought after Richard O'Neil, Shannon's father and Irene's son, was killed when his tractor trailer was struck by a train.

ADM Growmark owns and operates a grain elevator near the Mississippi River. There is one means of ingress and egress to ADM Growmark's property. To make grain deliveries to ADM Growmark trucks must drive south along East Prairie Avenue and then turn east onto East Grand Avenue. There is a public rail crossing containing three sets of tracks traversing East Grand Avenue. After crossing the tracks, truck drivers proceed down East Grand Avenue until they reach Wharf Street. Wharf Street leads directly to the grain elevator with the first ADM Growmark facility being a probing station approximately ⅜ of a mile from the rail crossing.

During the peak season many deliveries are made to the grain elevator. At times, traffic backs-up down the access roads. The day the decedent's truck was struck by a train East Grand Avenue was congested with traffic on both sides of the rail crossing.

In their petition, plaintiffs alleged that ADM Growmark had a duty to warn the decedent of the dangers at the rail crossing and to take precautions to prevent injuries while making deliveries to the grain elevator. Plaintiffs alleged this duty was owed to the decedent on four separate bases: 1) defendant had contractually assumed the duty; 2) defendant made a special use of the rail crossing; 3) defendant created a hazardous condition; and 4) defendant negligently maintained control of the rail crossing. The trial court dismissed the plaintiffs' claim concluding that the defendant was not liable under any of these theories. We affirm.

■ The requirements of a summary judgment have been extensively discussed and analyzed in *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). As identified there, the issue is whether the moving party has an undisputed right to judgment as a matter of law. *Id.* at [12].

■ Summary judgment is granted only when there is no genuine issue of material fact. The burden is on the moving party to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* A "defending party" has a right to summary judgment when "the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements ..." *Id.* at [16] (emphasis in original). This Court must review the record in the light most favorable to the non-moving party, resolving any doubts in favor of that party. *Id.* at [18–21].

To make a submissible case based on negligence "the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty and, that plaintiff's injury was proximately caused by defendant's failure." *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708 [2] (Mo.1990) (citations omitted). The issue before us is duty.

■ Plaintiffs first assert that an Industrial Track and License Agreement entered into with Burlington Northern Railroad for access to a spur line gave rise to a duty to safeguard the passage of trucks across the rail crossing on East Grand Avenue. Plaintiffs refer to language in the Agreement stating that ADM Growmark would maintain "the tracks (and crossings) . . ." at or near its facility subject to all provisions of public authority. Initially, we note that an obligation to maintain is not the same as a duty to prevent potential accidents. Further, defendant offered uncontradicted evidence that the siding tracks covered under the Agreement do not extend to the East Grand Avenue crossing. The siding tracks were not involved in the accident. The industrial Track and License Agreement clearly cannot create a contractual duty to maintain and make safe property that is not included within the leasehold.

■ Plaintiffs next contend that ADM Growmark's special use of the East Grand Avenue rail crossing gave rise to a duty. The general rule is that the duty to maintain public sidewalks and highways lies with the municipality. *Rauh v. Interco, Inc.*, 702 S.W.2d 497 [4] (Mo.App.1985); *see also* 40 C.J.S. Highways § 249. An exception to the general rule applies "when an abutting property owner has made use of the public sidewalk for some other purpose than merely using them as a public sidewalk, such as a driveway, or where the abutting owner puts an obstruction on the public sidewalk which was not a part of the public sidewalk as originally constructed in order to serve his own purposes." *Rauh v. Interco, Inc.*, 702 S.W.2d 497 [4] (Mo.App.1985), *citing Stein v. Mansion House Center*, 647 S.W.2d 918 [2] (Mo.App.1983); *Wright v. Hines*, 235 S.W. 831 [4] (Mo.App.1922).

■ Plaintiffs fail to make a submissible case under the special use exception. The public street and rail crossing were used only for their intended purposes. The fact that traffic backed-up down the street and through the rail crossing does not change the use from a thoroughfare into a parking lot as plaintiffs contend. *See Hungate v. U.S.*, 626 F.2d 60 [6] (8th Cir.1980). Defendant did not obstruct nor alter in any manner the street and rail crossing. It was used throughout as a road. Additionally, defendant was not the exclusive user of the rail crossing and East Grand Avenue. Traffic to another operation, the Bissell Street Treatment Plant construction site, negates the assertion that ADM Growmark used the public street solely for its own purposes. Plaintiffs' imaginative invocation of the special use doctrine stretches this exception beyond its present intendment.

■ Plaintiffs next assert a duty owed based on a second exception which imposes a duty on an abutting property owner when he artificially creates, through negligence or affirmative action, a condition which makes passage unsafe. *Stein v. Mansion House Center*, 647 S.W.2d 918 [1, 2] (Mo.App.1983). Plaintiffs also fail to establish a duty under this second exception. The only affirmative action by the defendant in this case was to open for the business of accepting grain deliveries. Any hazardous condition created outside the defendant's property was created by the affirmative action of third parties (e.g., other truck drivers or train engineers). To reason that defendant negligently allowed a hazardous condition to exist would be to assume a breach of the very duty in question. Many businesses attract heavy motor vehicle traffic (e.g., parking garages, drive through restaurants, automated teller machines) or pedestrian traffic (e.g., movie theaters, ticket outlets, frozen custard stands). It would not be reasonable to impose a duty of care, based merely on the occurrence of an accident, where no duty existed before. Given the distance of the accident from the defendant's property (⅜ of a mile), such a duty would have little if any principled or tangible means of demarcating its limits. *See Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912 [2] (Mo.App.1983).

■ Finally, plaintiffs allege that the defendant asserted control over the rail crossing in a negligent manner. The testimony of Jeffrey Becker, the superintendent of ADM Growmark's operations, and Tina Durbin, an ADM Growmark employee who witnessed the accident, indicated the defendant never controlled the flow of traffic over the rail crossing. Plaintiffs rely on the affidavit of Robert Harrison, a truck driver working at the Bissell Street Treatment Plant construction site, stating that "the grain elevator

controlled delivery of grain by signal light and whistle which signalled the trucks to move." Noticeably absent from Mr. Harrison's statement is the location of the signal light and whistle. Since Mr. Harrison's statement does not mention traffic control at the rail crossing and the statements of Mr. Becker and Ms. Durbin explicitly state the defendant never controlled traffic at the rail crossing, no reasonable inference can be drawn from Mr. Harrison's statement that the signal light and whistle used to control delivery were located at the crossing or attempted to control traffic at the crossing. The only reasonable inference is that the signal light and whistle were located on defendant's property to control movement thereon.

The facts and legal theories utilized by plaintiffs are insufficient to establish a duty owed decedent by defendant. The trial court did not err in its determination that plaintiffs could not prevail under any legal theory.

Judgment affirmed.

SIMON, P.J., and PUDLOWSKI, J., concur.