Kyle VONDER HAAR, By and Through the Attorney for the Guardian of his Estate and Next Friend, Kenneth ME-HOCHKO, et al., Plaintiff/Appellant,

v.

SIX FLAGS THEME PARKS, INC., and City of Eureka, Missouri, Defendants/Respondents.

No. ED 90105.

Missouri Court of Appeals,
Eastern District.

July 22, 2008.

Application for Transfer Denied
Sept. 30, 2008.

Gretchen Garrison, Joan Marie Lockwood, co-counsel, St. Louis, MO, for appellant.

Reed Waller Sugg, Timothy C. Sansone, co-counsel, St. Louis, MO, attorneys for Six Flags Theme Parks, Inc.

William Arnold Hellmich II, St. Louis, MO, attorney for City of Eureka, Missouri.

BOOKER T. SHAW, Judge.

Appellant Kyle Vonder Haar appeals the trial court's summary judgments in favor of Respondents Six Flags Theme Parks and the City of Eureka on Appellant's

petition for personal injuries and wrongful death. Appellant was seriously injured and his parents and three siblings were killed in a disastrous car accident on Interstate 44 while on their way to Six Flags. Appellant alleges twelve points of error. Points I–IX contend, in sum, that: Six Flags owed a duty of care in that it made special use of the roadway, it created a dangerous condition, and the risk of harm was foreseeable; it owed a duty to create a safe approach for invitees; it assumed a duty through its interactions with local authorities; and it created a nuisance. Points X–XII assert that Eureka owed a duty of care and is not shielded by sovereign immunity. The trial court's judgment is affirmed.

### Facts and Procedural History

On the morning of July 31, 2000, Appellant and his family were traveling west on I–44 en route to Six Flags when, nearly a mile before the exit, they encountered traffic in the right lane, collided with the car stopped in front of them, careened left into fluid lanes, and were broadsided by a tractor-trailer. An accident reconstruction report indicates that all occupants of the vehicle were unrestrained and the driver was not alert to the flow of traffic. Appellant's parents and three younger siblings died. Appellant sustained severe head and bodily injuries and remains permanently disabled. Appellant sued the trucking company DTI Lebanon Subsidiary, Inc., the Missouri Highway and Transportation Commission (MoDOT), Six Flags, and the City of Eureka. Appellant settled his claims against DTI and MoDOT. The following facts frame Appellant's claims against the remaining defendants, Six Flags and Eureka.

At the time of the accident, I–44 was a three-lane highway with a speed limit of 70 miles per hour. The right lane became an "exit only" lane approaching Exit 261 (Six Flags Road), and an additional, far-right exit lane began less than a mile before the ramp. Stoplights controlled traffic at the bottom of the ramp and again about 300 feet to the north at the intersection of Six Flags Road and Fifth Street. MoDOT owns, controls, and maintains the aforementioned interstate, roads, signage, and stoplights, all located in the City of Eureka.

Ramp congestion was an ongoing problem, and traffic accidents were frequent in the area. Within a mile of the exit, there were 315 incidents of property damage, 190 injuries, and 4 fatalities between 1992 and 1999. In 2000 alone, there were 40 incidents of property damage, 55 injuries, and 7 fatalities, including the Vonder Haars.

Six Flags is a major tourist attraction with peak attendance in the summer months and peak daily admissions in the late morning, around the time of the Vonder Haar accident. Eureka granted the zoning permits for Six Flags to operate and expand. Six Flags and Eureka were aware that traffic often became congested at Exit 261 during park operating hours and had discussed the problem on a task force with MoDOT for several years. When the stoplights occasionally malfunctioned, Six Flags and/or Eureka notified MoDOT, and MoDOT made adjustments. Eureka sometimes assigned police officers to direct traffic at the Fifth Street intersection. The parties often discussed plans to improve the roadways to alleviate congestion. MoDOT ultimately controls such projects but encourages local authorities to contribute funding in order to avoid delays imposed by state budget limitations. In 1998 and 1999 Six Flags made (but evidently did not honor) various financial commitments to improve Fifth Street. In June of 2000, Six Flags and Eureka executed a development agreement under

which Eureka levied upon Six Flags a business tax to fund those improvements.

On the morning of the Vonder Haar accident, Six Flags expected high attendance due to the expiration of admission passes granted through a school literacy program coinciding with a music concert scheduled in the park that day. Although cars were backed up on the exit ramp, traffic north of the Fifth Street stoplight flowed freely toward and into Six Flags' entrance lanes.

Appellant filed his petition in October 2004 alleging negligence and public nuisance against Six Flags and negligence against Eureka. Six Flags moved for summary judgment, asserting that it had no duty to the Vonder Haars as a matter of law. Eureka moved for summary judgment on the basis of sovereign immunity. The trial court granted their motions and this appeal followed.

## Discussion

*Standard of Review*

The purpose of summary judgment is to resolve cases in which there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *Grattan v. Union Elec. Co.*, 151 S.W.3d 59, 61 (Mo.2004). Appellate review of summary judgment is *de novo*, viewing the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993).

■ To make a submissible case of negligence, a plaintiff must first establish that the defendant had a duty to protect the plaintiff from injury. *Boggs v. Lay*, 164 S.W.3d 4, 15 (Mo.App. E.D.2005). Wheth-

er a duty exists is a question of law. *Id.* Appellant asserts, on various theories, that Six Flags owed the Vonder Haars a duty of care as a matter of law (points I, III, V, and VIII) and that the evidence thereof was sufficient to survive summary judgment (points II, IV, VI, VII, and IX). As against Eureka, Appellant argues that sovereign immunity does not shield the city from liability for its alleged duty and the evidence of negligence was sufficient (points X–XII).

*Points I–II: Exceptions to No Duty Rule*

■ It is well settled that the duty to maintain a public road in a safe condition rests on the municipality,[1] and not on the abutting property owner. *Id.* at 16. Appellant asserts that Six Flags duty of care arises under the two exceptions to this rule.

■ First, a duty exists when an abutting landowner makes special use of the road by placing an obstruction on it for the owners purposes or by using it as something other than a public road. *Id.* Here, Six Flags neither placed an obstruction on the roadways nor used them as something other than roads. In *Boggs*, this court found no special use where trucks awaiting entrance to a landowners business queued and even parked on a residential street. Similarly, we decline to adopt Appellants suggestion that Exit 261 is an extension of Six Flags private driveway merely because the exiting traffic was primarily comprised of park patrons.

■ Second, a duty exists when a landowner affirmatively creates a dangerous condition on the road, making passage unsafe. *Id.* at 17. In *Boggs*, this court found that the defendant affirmatively cre-

---

1. In this case, maintenance of the roadways in question lies with MoDOT pursuant to sec- tions 226.130, 227.030, and 227.210 RSMo.

ated a dangerous condition by controlling its own on-site traffic lights, closing its parking lot, and instructing truckers to proceed against traffic on the residential street in question. Here, Appellant attempts to characterize Six Flags solicitation [marketing], development, operation, and instruction to patrons [driving directions] as similarly careless affirmative acts. But, as a general rule, there is no liability simply for traffic generated by being open for business. *Id. (citing O'Neil v. ADM Growmark River Systems, Inc.,* 871 S.W.2d 54, 56 (Mo.App. E.D.1993)(no duty to alleviate congestion of delivery trucks queued over train tracks)).

Appellant submits that the controlling authority is *Sutton v. Fox Mo. Theatre Co.,* 336 S.W.2d 85 (Mo.1960). There, the plaintiff tripped and fell over a sidewalk sign, the base of which was obscured by a crowd assembled outside the doors of a theater. The Court reversed the trial courts directed verdict for the defendant theater because the crowd was predominantly composed of patrons assembled for the theaters benefit and constituted an artificial condition when gathered near the sign. Appellant suggests that, just as the theater could have opened its doors to permit entrance from the sidewalk, Six Flags could have opened additional parking. But our record reveals that traffic was flowing freely into Six Flags entrance lanes. The back-up was nearly a mile upstream on the other side of two MoDOT traffic lights. More generally, while *Sutton* does involve application of the exceptions to the no-duty rule, we fail to see how it controls here when *O'Neil* and *Boggs* provide a far superior factual analogy.

Point I is denied, so we do not reach point II (sufficiency of the evidence).

*Points III–IV: Foreseeability*

█ In the absence of a particular relationship recognized by law to create a duty, one policy consideration that courts examine in determining whether a duty exists is the foreseeability of the injury. *Boggs* at 17. Foreseeability is established when a defendant is shown to have knowledge, actual or constructive, that there is some probability or likelihood of injury sufficiently serious that an ordinary person would take precautions to avoid it. *Id.*

█ Appellant contends that Six Flags owed a duty of care to the Vonder Haars because the risk of harm was foreseeable, but the case law he offers does not support his position on the facts before us. Two involved crimes against business invitees on the defendants' property.[2] One involved a manufacturer's employees' control of machinery during a service visit on its customer's premises.[3] Another concerned the defendant's placement of unmarked power lines over a river.[4] In yet another, a duty arose by virtue of the contractual relationship between the parties, not from any actual or constructive knowledge.[5] These cases are far less instructive than *Boggs* and *O'Neil* on their facts, and they involve defendants who possessed some ability to take precautions to avoid the harm. Here, even if Six Flags foresaw the danger, MoDOT controlled the roadways, signage, and stoplights. Appellant suggests that Six Flags could have extended its hours or staggered admissions to reduce the morning rush hour. This court

---

**2.** *L.A.C. v. Ward Parkway Shopping Center Co.,* 75 S.W.3d 247 (Mo.2002), and *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo.1988).

**3.** *Cupp v. National Railroad Passenger Corp.,* 138 S.W.3d 766 (Mo.App. E.D.2004).

**4.** *Lopez v. Three Rivers Elec. Coop. Inc.,* 26 S.W.3d 151 (Mo.2000).

**5.** *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426 (Mo.1985).

declines to impose such a duty here. Point III is denied, so we do not reach point IV.

*Points V–VI: Safe Approach*

■ Appellant asserts that Six Flags had a duty to ensure its invitees' reasonably safe passage onto its premises. The Vonder Haar collision took place on a federal highway 8/10 of a mile from Six Flags' entrance. We are not persuaded that the Vonder Haars acquired invitee status merely by choosing an exit lane of I–44 that Six Flags was not putting to special use. Likewise, Appellant's authorities do not support his assertion absent an exception to the no-duty rule. One case involved a defendant's special use of a public right-of-way.[6] Another related to a defendant's special use of a public river containing a dangerous condition.[7]

Appellant also argues that lack of control over the approach does not lessen the duty. The precedent offered for this proposition concerned an invitee's slip-and-fall from the walkway of the defendant's store entrance onto a parking lot maintained by defendant's lessor pursuant to the lease.[8] Appellant's general premise is inapposite to the facts of this case. Here, the Vonder Haars' status as invitees is dubious at best, the distance between the accident and Six Flags' property is significant, and MoDOT had sole control of the roadway pursuant to legislative mandate. Appellant provides no precedent for imposing safe approach liability here or demarcating its limits for future application. Point V is denied.

Point VI asserts an issue of fact as to whether Exit 261 constituted an approach to Six Flags. Again, however, Appellant's authorities involve application of the special use exception.[9] Absent a special use giving rise to a duty, we need not examine whether the evidence was sufficient to survive summary judgment.

*Point VII: Assumption of Duty*

■ Appellant contends that Six Flags assumed a duty to alleviate traffic congestion at Exit 261 by: committing to conduct a traffic study, pledging funding for road improvements, monitoring highway traffic, working with Eureka and MoDOT on a task force, and notifying them about stoplight sequencing problems. From a policy standpoint, Appellant's position discourages collaboration between public entities and corporate citizens. Meanwhile, he provides no legal authority germane to the facts before us. One case involved a restaurant manager's handling of a patron's medical emergency.[10] Another considered the duty of a gas company to repair a sidewalk after excavating it.[11] Here, by contrast, the Vonder Haars were not on Six Flags' property, and Six Flags did not create a dangerous condition on I–44.

Additionally, Appellant's argument is premised on the existence of a duty that Six Flags was capable of assuming. But MoDOT possessed control of the roadways, signage, and stoplights pursuant to statute.[12] And the record confirms that, though MoDOT welcomed Six Flags' contributions, MoDOT expressly retained and

**6.** *O'Connell v. Roper Elec. Co.,* 498 S.W.2d 847 (Mo.App. S.D.1973).

**7.** *Dunbar v. Burns,* 973 S.W.2d 517 (Mo.App. S.D.1998).

**8.** *Cannon v. S.S. Kresge Co.,* 233 Mo.App. 173, 116 S.W.2d 559 (1938).

**9.** *O'Connell* and *Dunbar.*

**10.** *Strickland v. Taco Bell Corp.,* 849 S.W.2d 127 (Mo.App. E.D.1993).

**11.** *Benedict v. Northern Pipeline Construction,* 44 S.W.3d 410 (Mo.App. W.D.2001).

**12.** Sections 226.130, 227.030, 227.040, 227.060, 227.210, and 227.220 RSMo.

exercised that statutory authority over any final decisions or actions concerning roadway improvements. As a matter of law, no duty was available for Six Flags to assume under the facts of this case. Point VII is denied.

*Points VIII–IX: Nuisance*

 In his last points against Six Flags, Appellant maintains that the traffic congestion at Exit 261 constituted a public nuisance for which Six Flags can be held liable. Generally, "[n]uisance is the unreasonable, unusual or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." *Davis v. J.C. Nichols Co.,* 714 S.W.2d 679, 684 (Mo.App. W.D.1986). "A public nuisance is any unreasonable interference with common community rights such as the public health, safety, peace, morals or convenience." *City of Lee's Summit v. Browning,* 722 S.W.2d 114, 115 (Mo.App. W.D.1986). "*Actions* that create a traffic hazard are properly considered to be public nuisances." *44 Plaza, Inc. v. Gray–Pac Land Co.,* 845 S.W.2d 576, 580 (Mo.App. E.D.1992)(*citing Browning* at 115–116) (emphasis added).

Again, the foregoing authorities, while generally valid, do not apply here. *Davis* was about the construction of a parking lot next to the plaintiff's apartment building. *Browning* involved junked cars from a nearby salvage yard parked and obstructing traffic on a residential street. *44 Plaza* concerned trees planted by the landowner near the edge of its property such that they obstructed motorists' line of sight approaching a sharp curve in an adjacent public road. To the extent that traffic congestion alone might ever merit a nuisance analysis at all, *Grommet v. St. Louis County,* 680 S.W.2d 246 (Mo.App. E.D.1984) provides useful guidance. There, when landowners complained about traffic congestion on a road that they shared with a nearby school, this court held that the "mere driving of automobiles [on the roadway] cannot be considered a nuisance. The public is entitled to the full and free use of all the territory embraced within a public roadway." *Id.* at 251. We decline to expand the principles of nuisance law to create a duty under these facts. Point VIII is denied, so we do not reach point IX.

*Points X–XI: General Negligence as Against Eureka*

 In his first of three points against Eureka, Appellant primarily contends that Eureka owed a duty of care under general principles of negligence to which sovereign immunity does not apply. A municipal corporation enjoys sovereign immunity when functioning in its governmental capacity but not when functioning in its proprietary capacity. *See Wollard v. City of Kansas City,* 831 S.W.2d 200, 202 (Mo.1992). Appellant maintains that Eureka was functioning in its proprietary capacity when it failed to regulate Six Flags' location, size, days and hours of operations, and events. On the contrary, zoning is a governmental and legislative function and cannot give rise to tort liability. 8 McQuillin Mun. Corp. § 25.54 (3rd ed.), *Strandberg v. Kansas City,* 415 S.W.2d 737, 742 (Mo.1967). Because Eureka enjoys sovereign immunity as a matter of law, point X is denied, so we do not reach the question of sufficiency of the evidence raised in Appellant's point XI.

*Point XII: Statutory Waiver of Sovereign Immunity*

 Finally, Appellant contends that Eureka's conduct falls within section 537.600, which waives sovereign immunity for dangerous conditions on a public entity's property. Appellate courts have found dangerous conditions to exist for purposes of the sovereign immunity waiver in the following roadway situations: a fall-

en stop sign at an intersection,[13] failure to warn of a newly opened intersection with additional lanes,[14] failure to warn of a bridge on which ice accumulated,[15] failure to warn of a sudden curve and obscured intersection,[16] and failure to reinstall a traffic control device at an intersection.[17] Absent briefing on this issue by either party, we decline to hold that traffic congestion alone is comparable to the foregoing scenarios. In any event, such a proposition would necessitate an allegation of defective highway design, for which MoDOT is solely responsible. Here lies the crux of the parties' dispute under this point.

Appellant argues essentially that MoDOT's ownership and control of the roadways do not preclude application of the waiver against Eureka because the city still maintained sufficient control to take precautionary measures, such as the use of city police to direct traffic at the intersections. Appellant's authorities stand for the general proposition that control can substitute for ownership. *Tillison v. Boyer*, 939 S.W.2d 471 (Mo.App. E.D.1996) (county did not control property from which tree fell onto county premises, injuring employee); *James v. Farrington*, 844 S.W.2d 517 (Mo.App. W.D.1992)(county board of election commissioners controlled church property used as polling place on election day). Eureka responds with factually relevant guidance in *Ford v. Cedar County*, 216 S.W.3d 167 (Mo.App. S.D. 2006). There, when the family of a deceased motorcyclist sued the county where

his accident occurred, the court upheld summary judgment because the road was under the exclusive possession and control of a special road district created pursuant to state statute. Although Appellant challenges the exclusivity of MoDOT's control as a factual matter, additional precedent instructs otherwise as a matter of law. "Our state constitution and statutes [18] . . . vest exclusive control, dominion, power, and jurisdiction over this [highway] in the Missouri Highway and Transportation Department." *Crofton v. City of Kansas City*, 660 S.W.2d 709, 717 (Mo.App. W.D. 1983). *See also Summitt v. Roberts*, 903 S.W.2d 631 (Mo.App. W.D.1995)(plaintiff's assertion of joint possession untenable in light of sections 227.030 and 227.210). Point XII is denied.

## Conclusion

No member of this court ignores the gravity of Appellant's tragic, indeed heartbreaking, loss. As a legal matter, however, we must conclude that Appellant has already recovered from the proper defendants. The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.

---

**13.** *Donahue v. City of St. Louis,* 758 S.W.2d 50 (Mo.1988).

**14.** *Nagy v. Missouri Highway and Transp. Comm'n,* 829 S.W.2d 648 (Mo.App. E.D. 1992).

**15.** *Wilkes v. Missouri Highway and Transp. Comm'n,* 762 S.W.2d 27 (Mo.1988).

**16.** *Cole v. Missouri Highway and Transp. Comm'n,* 770 S.W.2d 296 (Mo.App. W.D. 1989).

**17.** *Fox v. City of St. Louis,* 823 S.W.2d 22 (Mo.App. E.D.1991).

**18.** Referring to Mo. Const. Art. 4, sections 29 and 31 and sections 227.030 and 227.210 RSMo.